[Cite as *State v. King*, 2013-Ohio-574.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98234

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DOMETRIC S. KING

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-558799

BEFORE:   Stewart, A.J., Rocco, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   February 21, 2013

**ATTORNEY FOR APPELLANT**

Robert H. Williams
Hildebrand, Williams & Farrell
21430 Lorain Road
Fairview Park, OH    44126


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Patrick J. Lavelle, Jr.
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, A.J.:

{¶1} The court found defendant-appellant Dometric King guilty of possession of drugs, trafficking in drugs, and one count of participating in a criminal gang. In this appeal, King challenges the sufficiency and weight of the evidence only as it relates to the participation in a criminal gang count. He argues that the state failed to prove that he was a member of the Star Boyz gang because its evidence showed nothing more than that he associated with known gang members.

I

A

{¶2} R.C. 2923.42(A), which defines the offense of participating in a criminal gang, states:

> (A) No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.

{¶3} As applicable here, a "criminal gang" is defined by R.C. 2923.41(A) as "an ongoing formal or informal organization, association, or group of three or more persons" that has a common name or identifying signs, symbols, or colors; and the persons in that group have either individually or collectively been engaged in a pattern of criminal activity.

{¶4} A "pattern of criminal activity" is defined by R.C. 2923.41(B) as follows:

(B)(1) "Pattern of criminal gang activity" means, subject to division (B)(2) of this section, that persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of two or more of any of the following offenses:

(a) A felony or an act committed by a juvenile that would be a felony if committed by an adult;

(b) An offense of violence or an act committed by a juvenile that would be an offense of violence if committed by an adult;

(c) A violation of section 2907.04, 2909.06, 2911.211 [2911.21.1], 2917.04, 2919.23, or 2919.24 of the Revised Code, section 2921.04 or 2923.16 of the Revised Code, section 2925.03 of the Revised Code if the offense is trafficking in marihuana, or section 2927.12 of the Revised Code.

(2) There is a "pattern of criminal gang activity" if all of the following apply with respect to the offenses that are listed in division (B)(1)(a), (b), or (c) of this section and that persons in the criminal gang committed, attempted to commit, conspired to commit, were in complicity in committing, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in committing:

(a) At least one of the two or more offenses is a felony.

(b) At least one of those two or more offenses occurs on or after January 1, 1999.

(c) The last of those two or more offenses occurs within five years after at least one of those offenses.

(d) The two or more offenses are committed on separate occasions or by two or more persons.

{¶5} Finally, "criminal conduct" is defined as

the commission of, an attempt to commit, a conspiracy to commit, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of an offense listed in division (B)(1)(a), (b), or (c) of this section * * *.

R.C. 2923.41(C).

B

{¶6} The state offered the testimony of two law enforcement officers who testified generally as to the gang culture in Cleveland and more specifically to establish that King actively participated in the Star Boyz gang. Viewing the evidence most favorably to the state, *see State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78, that evidence showed that Cleveland gangs tended to form along small, neighborhood-oriented groups as opposed to the larger, more hierarchical national gangs. The Star Boyz derived their name from Star Avenue, a street within their territory, although they sometimes referred to themselves as "STH," an abbreviation for "Star Town Hustlers"; "D-Block," a reference to Decker Avenue, a street within their territory; and "RDS," an abbreviation for Redell, Decker, and Star Avenues, all streets within the gang's territory.

{¶7} An agent with the Federal Bureau of Alcohol, Tobacco, and Firearms testified that over a period of years, he built a profile of more than 40 individuals who were associated by police reports and criminal activity with the Star Boyz. He monitored social networking sites to keep abreast of their activities and gathered information on those affiliated with the gang through photographs and postings on those sites. The agent noted that gang graffiti in the territory often documented the gang's presence as a warning to those who would enter their territory. He identified photographs documenting different graffiti that identified the territory as belonging to the Star Boyz.

The Star Boyz did not have a common "color," but a member of the gang showed the agent the four different signs the gang used. The agent was able to download from social networking sites many photographs showing known gang members giving various Star Boyz signs. There were also photographs showing graffiti paying tribute to deceased gang members on numerous buildings within the gang's territory. Other photographs showed gang members with tattoos featuring the name of the gang or tributes to deceased members. Finally, the state offered photographs of known gang members posing in a group photograph, displaying stars as a homage to the gang and its name. This evidence was sufficient to establish the existence of the Star Boyz gang.

{¶8} As evidence of a pattern of criminal activity, the agent testified that in six years of following the Star Boyz, he knew that they had been involved in "numerous firearms-related incidents, such as aggravated robbery, car jacking, [and] felonious assault shootings." The agent testified that the gang was "opportunistic" in that members acted either alone or in concert when they saw a vulnerable target holding cash or some other possession that they desired. The Star Boyz occupy a relatively small territory (about four square blocks), they know the people living in that territory, and use intimidation and threats of violence to create a veil of secrecy and ensure that their criminal activities remain unreported by those non-gang members living within their territory.

{¶9} The evidence showed that in general, gangs claim the sole right to traffick drugs within their territory. They enforce that claim by violence and when non-gang members are caught drug dealing within a gang's territory, the gang will exact a

punishment as means of enforcing territorial boundaries.

{¶10} The agent identified a number of journal entries from various criminal cases involving known members of the Star Boyz. There were other criminal incidents involving gang members in which the state had been unable to obtain convictions on charges, but the agent said that was a result of gang members intimidating victims and witnesses into recanting or refusing to testify. The agent also identified a number of photographs, again taken from social networking sites, showing known gang members posing with firearms. The agent said that it was "not uncommon for a gang member to show himself in a photograph holding a gun or putting photographs on social media to intimidate other gangs to not mess with them or with the gang."

{¶11} This testimony dovetailed with that of a Cleveland narcotics officer who testified that the Star Boyz and the rival 7-All gang were involved in "a very volatile and violent gang war." The officer said that in 2002, the war resulted in the murder of a 7-All member and that bystanders identified a Star Boyz member as the shooter. The officer detailed another shooting of a 7-All member in which the shooter was again identified as a member of the Star Boyz.

{¶12} As for King's participation with the Star Boyz, the agent testified that King lived on Redell Avenue within the Star Boyz territory and had been involved with Star Boyz members since at least 2002. The police officer testified that King had been on a police watch list as a member of the Star Boyz. He said that when he had been a line officer, he patrolled the Star Boyz territory every day for at least two years and "quite regular[ly]" saw King with other gang members. When asked to define what he meant

by "quite regularly," the officer said, "[i]f I worked six days, maybe five." The agent referenced two photographs taken from the cell phone of a known Star Boyz member that showed King posing with other gang members who were displaying stars. In one of the pictures, King is saluting. King's presence in the group photograph was consistent with evidence that King trafficked in drugs inside the Star Boyz territory. The officer testified that the gang strictly controlled who could traffick drugs in their territory — if a person could sell drugs inside Star Boyz territory without being harassed, it meant that the person did so with the gang's approval. This was a tacit acknowledgment that the person selling drugs was in the gang.

{¶13} The evidence going to whether King had knowledge that the Star Boyz engaged in a pattern of criminal gang activity was shown by testimony concerning an ongoing war between the Star Boyz and their rivals, the 7-Alls, whose territory abuts that of the Star Boyz. In 2006, King was accompanying another male when they saw a car driven by a member of the 7-Alls. King pulled out a handgun and fired into the car. He later pleaded guilty to attempted felonious assault as a result of the shooting. The officer described another incident involving the gang war between the Star Boyz and 7-Alls in which a car carrying Star Boyz shot into a car occupied by 7-Alls. The police arrested various members of both gangs after the shooting and the officer identified King as being in the Star Boyz car.

C

{¶14} King argues that the state's witnesses did not offer direct evidence that he was an active member of the Star Boyz gang. He notes that there was no evidence of his

membership from other admitted gang members or that he bore a gang tattoo as did other members. He thus maintains that the state tried to establish his membership through guilt by association on the basis of his appearing in group photographs featuring other known gang members.

{¶15} If the state's evidence consisted of nothing more than two photographs showing King in the company of other gang members, King's argument might have merit. "[N]ominal or passive association" with a gang is not enough to prove active gang membership, *State v. Hairston*, 9th Dist. Nos. 23663 and 23680, 2008-Ohio-891, ¶ 18, and King's mere presence in photographs of gang members — his association with them — without more, would not be enough to establish that he participated in gang activity.

{¶16} The lack of direct evidence that King belonged to the Star Boyz was expected because the evidence showed that most gang members deny their membership to the police for fear of drawing attention, much less admitting that the gang exists at all. The circumstantial evidence, however, showed the existence of Star Boyz graffiti and photographs of members making the distinctive Star Boyz sign. Members of the 7-All gang confirmed the existence of the Star Boyz and their open gang war left no doubt that the gang existed.

{¶17} With the existence of the gang established, the state offered compelling circumstantial evidence to show that King's constant presence with gang members proved that his relation to them was more than a mere "association."

{¶18} Circumstantial evidence is defined as "'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from

which deductions are drawn, showing indirectly the facts sought to be proved. * * *'" *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting *Black's Law Dictionary* 221 (5th Ed.1979). That is, circumstantial evidence is a set of facts from which another fact may be inferred, as opposed to direct evidence, which goes directly to the fact to be established.

{¶19} King grew up and lived in Star Boyz territory and the law enforcement officers testified that they constantly saw King in the presence of other gang members. We agree that King's mere presence in his own neighborhood, standing alone, did not prove his membership in the gang, but the logical inferences from the state's evidence could lead a rational trier of fact to conclude that his constant presence went beyond mere association. The state's evidence showed that King had been documented as being present during two separate incidents involving shootings between the Star Boyz and their rivals, the 7-Alls. King's participation in these shootings went beyond being a mere bystander. He actively fired a gun into a car driven by 7-All members. This act was no one-off — the police documented a second shooting incident involving a car carrying King and other Star Boyz members firing at a car driven by 7-All members. Even if King was a mere bystander during one shooting, it was highly unlikely that he was innocently involved in two separate shootings. A rational trier of fact could find that King's act of riding in a car with Star Boyz members and actually shooting at a rival gang member's car was an affirmative act that announced his affiliation with the Star Boyz.

{¶20} That affiliation was further demonstrated by photographs showing King posing with known Star Boyz members. This was more than a photograph showing a

random group of people — it was a group photograph of known Star Boyz members, some of whom were shown holding cut-out stars. The presence of the stars served to confirm the gang affiliation of those in the photograph. In addition, the photograph shows King saluting, an act that a rational trier of fact could conclude was a show of allegience to the gang itself.

{¶21} Finally, King's drug trafficking within Star Boyz territory was itself a telltale sign of membership. Testimony showed that gangs enforced their exclusive claim to drug dealing inside their territory. If an interloper appeared, the gang would actively remove that person, usually by means of violence. So if King was openly selling drugs in Star Boyz territory without retaliation, it must have been because he was a Star Boyz member.

{¶22} It is true that unlike some other members of the gang, King did not have any tattoos displaying his gang affiliation or honoring deceased gang members. However, King offered no evidence to show that tattoos were the sine qua non of Star Boyz membership. Regardless of whether he had a gang tattoo, his constant presence in the company of other gang members, and in particular his involvement in skirmishes with rival gangs, could cause a rational trier of fact to conclude that King's involvement with the Star Boyz went beyond passive association and amounted to active membership in the gang. To find otherwise would be to ignore the obvious circumstantial evidence.

II

{¶23} King next argues that his conviction is against the manifest weight of the evidence, relying on the same arguments about his membership in the gang that he made

when claiming that there was insufficient evidence to support his conviction. To the extent that these arguments overlap, we summarily reject them.

{¶24} The only new argument King raises in this assignment of error is that it is possible for a gang member to commit a crime that has nothing to do with that gang member's participation in a gang. He argues that the drug transaction he committed was a solo endeavor (made in the company of a non-gang member) and that there was no proof that the transaction was for the "benefit" of the gang.

{¶25} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986).

{¶26} The evidence showing that drug trafficking by non-gang members within a gang's territory would not be tolerated was credible enough that the court did not lose its way by concluding that King was a member of Star Boyz. As previously discussed, the court heard competent, credible evidence establishing the existence of the Star Boyz gang, the gang's participation in criminal activity including drug trafficking, and the manner in which the gang enforced its claimed exclusive right for its members to traffick drugs within its territory. Given this evidence, the court did not lose its way by concluding that King's ability to traffic drugs in Star Boyz territory was credible evidence of his membership in the gang.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, ADMINISTRATIVE JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR