[Cite as *State v. Smith* , 2018-Ohio-3410.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106482**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JUAN SMITH, A.K.A. JUAN SMITH, JR.**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-617314-A

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEY FOR APPELLANT**

Michaele Tyner
Michaele Tyner, Attorney At Law
P.O. Box 530
Richfield, Ohio 44286


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Ryan J. Bokoch
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1}   Defendant-appellant, Juan Smith (a.k.a. Juan Smith, Jr.) ("Smith"), brings this appeal challenging his guilty plea to participating in a criminal gang, having weapons while under disability ("HWWUD"), and drug possession.   For the reasons set forth below, we affirm.

{¶2}   In June 2017, Smith was charged with one count of participating in a criminal gang, one count of illegal possession of a firearm in a liquor permit premises, one count of drug possession, two counts of HWWUD,   and two counts of carrying a concealed weapon ("CCW").  The HWWUD and CCW counts each carried a forfeiture specification, and the single count of drug possession carried a one-year firearm specification.

{¶3} In September 2017, Smith pled guilty, pursuant to a plea agreement with the state, to one count of participating in a criminal gang, two counts of HWWUD, and one count of drug possession, as indicted.   At both the plea and sentencing hearings, the parties recommended to the trial court an agreed sentence of three to five years.

{¶4}   At sentencing, the trial court imposed an eight-and-a-half year prison sentence. Specifically, the trial court sentenced Smith to a five-year prison term on Count 1 (participating in a criminal gang), a two-year term on each of Counts 3 and 5 (HWWUD), and a six-month term on Count 7 (drug possession).   The trial court ordered Smith to serve the mandatory one-year term for the gun specification prior to the base charge on Count 7.   The trial court further ordered that Smith serve the prison terms for Counts 1, 3, and 7 consecutively to one another, and concurrently with the prison term for Count 5.

{¶5}   It is from this order that Smith appeals, raising the following two assignments of error for our review:

Assignment of Error One

The trial court erred in accepting [Smith's] plea to [HWWUD] in that such plea was not knowingly, voluntarily, or intelligently made.

## Assignment of Error Two

The trial court erred in accepting [Smith's] plea to participating in criminal gang activity and drug abuse in that such pleas were not knowingly, voluntarily, or intelligently made.

## Guilty Plea

**{¶6}** In the first and second assignments of error, Smith contends that the trial court erred by accepting his guilty plea because he did not make his plea knowingly, voluntarily, or intelligently.

**{¶7}** Crim.R. 11(C)(2) governs the trial court's acceptance of guilty pleas in felony cases. It provides, in relevant part:

(2) In felony cases the court may refuse to accept a plea of guilty * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶8} The purpose of Crim.R. 11(C) is to convey to the defendant certain information so that he or she can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C). *State v. Davner*, 8th Dist. Cuyahoga Nos. 104745 and 105144, 2017-Ohio-8862, ¶ 41.

{¶9} We review a trial court's compliance with the requirements set forth in Crim.R. 11(C) under a de novo standard of review. *State v. Darling*, 8th Dist. Cuyahoga No. 104517, 2017-Ohio-7603, ¶ 17. We review the totality of the circumstances surrounding the defendant's plea to determine whether it was entered into knowingly, intelligently, and voluntarily. *State v. Alvelo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 21 (8th Dist.).

{¶10} A trial court must strictly comply with Crim.R. 11(C) where constitutional rights are involved. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. However, with respect to the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b), substantial compliance is sufficient. *Id*. at _ 14.

{¶11} Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Additionally, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made because the trial court failed to substantially comply with any of the nonconstitutional notifications under Crim.R. 11 must show a prejudicial effect. *Id.*, citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977); Crim.R. 52(A). The relevant test is whether the plea would have otherwise been made. *Id*.

**{¶12}** Here, Smith acknowledges that the trial court advised him of his constitutional rights, as well as the possible penalties involved for the offenses to which he pled guilty. However, in the first assignment of error, Smith argues that his guilty plea to two counts of HWWUD was not knowingly, intelligently, or voluntarily made because the trial court did not advise him of the effect of these low-tier, third-degree felonies. Smith argues he has a constitutional right to be advised of the tier classification of the HWWUD charges to which he pled guilty. We find this argument unpersuasive.

**{¶13}** At the plea hearing, the trial court inquired of the state as to whether the two HWWUD counts were high-tier or low-tier, third-degree felonies. It is clear that the trial court asked this question in order to properly advise Smith of the maximum possible penalty for this particular offense because Ohio law provides for two different possible sentencing ranges for third-degree felonies, depending on the particular offense. *See* R.C. 2929.14(A)(3). Smith acknowledges that before accepting his plea, the trial court advised him of the maximum penalties for the charges to which he agreed to plead guilty as required under Crim.R. 11(C)(2)(a). We note that Crim.R. 11 does not require a trial court to advise a defendant of the different sentencing ranges applicable for offenses other than the particular offense to which the defendant is pleading guilty.

**{¶14}** In the second assignment of error, Smith argues that the trial court's acceptance of his guilty plea to participating in a criminal gang was unconstitutional because the record demonstrates that Smith either did not fully understand what a gang was, or did not actually fully participate in a criminal gang. Smith also argues the trial court's discussion with him regarding his understanding of the nature of the drug possession charge and the gun specification was insufficient. We find these arguments unpersuasive.

{¶15} At the sentencing hearing, the trial court questioned Smith about his gang activity.

THE COURT:   What gang do you belong to?

[SMITH]:   J Park

THE COURT:   Who is the leader?

[SMITH]:   I have no idea.

THE COURT:   I thought every gang had a leader.  How does the gang work if you don't have a leader?   Are you told what to do as a member of the gang?

[SMITH]:   Nobody.

THE COURT:   How do you know the rules?   Don't the gangs have rules?

[SMITH]:   This gang doesn't.

THE COURT:   Do you have a rule against snitching on each other?

[SMITH]:   Yes.

THE COURT:   Who enforces the rule?

[SMITH]:   The main _ Daniel McQueen.

THE COURT:   He enforces the rules?

[SMITH]:   He got killed in 2012.

THE COURT:   Who is enforcing them now, five years later?   So you can snitch on everybody and no one could enforce any rule against you, right?

[SMITH]:   No, Your Honor.

THE COURT:   Who would enforce it?

[SMITH]:   There is nobody else your, Your Honor.

THE COURT:   So then you can tell and nobody can enforce the snitch rule, why not tell on them and get yourself some favors?

[SMITH]:   I have — I have never been a codefendant with nobody [sic] from my gang.

THE COURT: You are the sole operator, you operate on your own?

[SMITH]: Yes, Your Honor.

THE COURT: So you operate on your own, the gang has no leader, no one can enforce the no snitch rule, why be in a gang? What is the purpose of being in a gang that has no leader, has no rule enforcement?

[SMITH]: I can't really explain it to you.

THE COURT: Okay, sir. I would think that if I was going to be in a gang, it's because I would want somebody to enforce the rule so no one can snitch on you. That would be the number one rule I would want enforced, but if they are not enforcing that rule, what's the benefit of being in a gang? I really don't know. I'm not being facetious. Tell me what the benefit is?

[SMITH]: I guess there really was no benefit.

THE COURT: So you going to prison on a [second-degree felony] for participating in a criminal gang that has no benefit. How much sense does that make? Does that make sense to you?

[SMITH]: Not really.

{¶16} Smith argues that this exchange at the sentencing hearing indicates that he "was merely a nominal or passive member of the gang, which as a matter of law, negates any criminal liability for gang actions." He further argues that as a result of this exchange, the trial court should have concluded that he did not knowingly, intelligently, or voluntarily plead guilty to participating in a criminal gang. We find these arguments unpersuasive.

{¶17} In support of these arguments, Smith relies on *State v. King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574. In *King*, this court held that "[n]ominal or passive association" with a gang is not enough to prove active gang membership at trial. *Id.* at ¶ 15, quoting *State v. Hairston*, 9th Dist. Nos. 23663 and 23680, 2008-Ohio-891, ¶ 18. Here, Smith pled guilty to participating in a criminal gang, and specifically acknowledged before entering this plea that he

waived his right to have the state prove his guilt beyond a reasonable doubt. As a result, the state no longer had the burden to prove that Smith participated in a criminal gang.

{¶18} Moreover, a defendant cannot rely on post-plea statements or claims of innocence to establish that the trial court erred in accepting his plea. *State v. Damron*, 2d Dist. Champaign No. 2014-CA-15, 2015-Ohio-2057, ¶ 10. This court has held that "when a defendant makes claims of innocence after a guilty plea has been accepted, a trial court has no duty to inquire into a defendant's reasons for pleading guilty." *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 13. The proper way to address post-plea claims of innocence is a motion to withdraw a guilty plea. *Damron* at ¶ 10. The trial court has no duty to inform a defendant of his or her ability to file a motion to withdraw a plea under Crim.R. 32.1. *Reeves* at ¶ 13.

{¶19} Here, the record demonstrates that the trial court fully complied with Crim.R. 11, and that Smith made his plea knowingly, voluntarily, and intelligently. As discussed above, Smith acknowledges that the trial court advised him of the constitutional rights he would waive by pleading guilty, as well as the maximum penalties involved. Smith does not contend that he did not understand the nature of the charges or the possible penalties involved. The record reflects that the trial court advised Smith of the effect of his guilty plea. The record is devoid of any indication of confusion, hesitation, or protestations of innocence by Smith during the plea hearing. Based upon our de novo review of the record and the totality of the circumstances surrounding Smith's plea, we determine that Smith entered his guilty plea knowingly, intelligently, and voluntarily.

{¶20} Based on the foregoing, we find that the trial court did not err in accepting Smith's guilty plea. Accordingly, the first and second assignments of error are overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR