DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Ella M. Varney, appeals the decision of the Hocking County Court of Common Pleas convicting her of one count of obstruction of justice and two counts of receiving stolen property. Appellant contends there was error in that: 1) she was provided ineffective assistance of counsel in that counsel failed to object to the joinder of the obstruction of justice charge and the receiving stolen property charges; 2) the trial court *Page 2 
committed plain error by failing to sever the obstruction of justice charge from the receiving stolen property charges; 3) there was insufficient evidence to convict her for receiving stolen property; 4) her receiving stolen property convictions were against the manifest weight of the evidence, and; 5) her obstruction of justice conviction was against the manifest weight of the evidence.
 {¶ 2} After reviewing the record below, we find none of Appellant's assignments of error are warranted. Because the evidence presented by the State was simple and direct, there was no likelihood of the jury confusing the obstruction of justice and receiving stolen property charges. As such, joinder of the offenses was not prejudicial. Accordingly, Appellant's first two assignments of error are overruled. We overrule her third assignment of error because there was sufficient evidence for a jury to find all the essential elements of receiving stolen property beyond a reasonable doubt. As to her fourth and fifth assignments of error, after weighing the evidence and the reasonable inferences, we are unable to say the jury clearly lost its way and created a manifest miscarriage of justice in finding Appellant guilty of receiving stolen property and obstruction of justice. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court. *Page 3 
 I. Facts {¶ 3} Prior to the events in question, Appellant's husband, Frank Varney, had been convicted of vandalism and placed on community control. During the course of a separate investigation, law enforcement became aware of the possibility that he had violated the terms of his community control. Police officers, including Detective Kevin Groves, went to Frank Varney and Appellant's residence to further investigate the information. When they arrived, the officers were granted permission to search the home. During the search they noted numerous all terrain vehicles (ATVs) in Appellant's garage. Officers recorded the vehicle identification numbers of some of these vehicles and left the residence.
 {¶ 4} Subsequently, Detective Groves interviewed a number of witnesses with first-hand knowledge of the activities occurring at Appellant's residence. These witnesses including Josh Varney, Appellant's son, and Josh's girlfriend, Samantha Nelson. The witnesses told Groves Appellant knowingly allowed her brother, Timothy Stafford, to live on her property. This, despite the fact that Appellant knew Stafford was a fugitive and that there were numerous warrants out for his arrest. The witnesses further stated that Appellant and her husband had taken steps to actively conceal Stafford's presence from law enforcement. In addition to the *Page 4 
information concerning Stafford, checking the ATV vehicle identification numbers revealed that at least one of them had previously been reported as stolen. As a result of this information, the police obtained a search warrant and returned to Appellant's property.
 {¶ 5} Upon executing the warrant, police found Timothy Stafford in a mobile home on Appellant's property situated 700 to 800 feet behind Appellant's residence. Police impounded the all terrain vehicles and arrested Appellant, her husband Frank Varney, and Stafford. It was subsequently learned that another of the ATVs in Appellant's garage was also stolen.
 {¶ 6} Appellant and Frank Varney were both charged with two counts of receiving stolen property and one count of obstruction of justice for harboring Stafford. The case proceeded to trial and the jury found Appellant guilty on all three counts. The current appeal ensued.
 II. Assignments of Error {¶ 7} 1. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH
AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO REQUEST THAT THE RECEIVING-STOLEN-PROPERTY CHARGES BE SEVERED FROM THE OBSTRUCTING-JUSTICE CHARGE.
 {¶ 8} 2. THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED MRS. VARNEY'S RIGHT TO DUE PROCESS UNDER THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION *Page 5 
WHEN IT FAILED TO SEVER THE RECEIVING-STOLEN-PROPERTY CHARGES FROM THE OBSTRUCTING-JUSTICE CHARGE.
 {¶ 9} 3. THE TRIAL COURT VIOLATED MRS. VARNEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED JUDGMENTS OF CONVICTION FOR RECEIVING STOLEN PROPERTY IN THE ABSENCE OF SUFFICIENT EVIDENCE TO ESTABLISH GUILT. FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 10} 4. THE TRIAL COURT VIOLATED MRS. VARNEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED JUDGMENTS OF CONVICTION FOR RECEIVING STOLEN PROPERTY, WHICH WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 11} 5. THE TRIAL COURT VIOLATED MRS. VARNEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR OBSTRUCTING JUSTICE, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 III. First and Second Assignments of Error {¶ 12} The basis of both Appellant's first and second assignments of error is that joinder of the offenses of receiving stolen property and obstruction of justice was prejudicial. Her first assignment of error is that her trial counsel was ineffective in failing to request the severance of the offenses. Her second assignment of error is that, though trial counsel failed *Page 6 
to object to joinder, the trial court should have, sua sponte, severed the charges and conducted separate trials.
 {¶ 13} Ohio's Criminal Rules provide for joinder of offenses in Crim. R. 8(A): "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." The law favors joinder of offenses and its application is liberally permitted because a single trial conserves resources and minimizes potentially incongruous results which may occur from successive trials held before different juries.State v. Schiebel (1990), 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54;State v. Schaim, 65 Ohio St.3d 51, 58, 1992-Ohio-31, 600 N.E.2d 661.
 {¶ 14} However, joinder of offenses is not always appropriate and separate trials may be necessary to prevent prejudice. Crim. R. 14 states, in pertinent part: "If it appears that a defendant or the state is prejudiced by * * * such joinder for trial together of indictments, informations or complaints, *Page 7 
the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 15} "To effectively claim error in the joinder of multiple counts in a single trial, appellant must make an affirmative showing that his rights were prejudiced." State v. Barstow, 4th Dist. No. 02CA27, 2003-Ohio-7336, at ¶ 54. After an affirmative showing by the appellant, the State can negate the allegation of prejudice in two ways. The first method is the "other acts" test. Under this test, "* * * the state must exhibit that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the `other acts' portion of Evid. R. 404(B)." Id. at ¶ 54. The second method is the "joinder test." Under the joinder test, "* * * the state is not required to meet the stricter `other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct." State v. Sadler, 9th Dist. No. 23256,2006-Ohio-6910, at ¶ 6, citing State v. Roberts (1980),62 Ohio St.2d 170, 175, 16 O.O.3d 201, 405 N.E.2d 247. "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as `other acts' under Evid. R. 404(B)." Sadler at ¶ 6. *Page 8 
 {¶ 16} After reviewing the record in the case at bar, we find that Appellant's allegation of prejudice has been negated by the State under the "joinder" test. Despite Appellant's assertions to the contrary, the evidence produced for both the receiving stolen property offenses and the obstruction of justice offense was simple and direct. The evidence the prosecution used to demonstrate receiving stolen property was clearly distinct from that used to demonstrate obstruction of justice and the jury was easily able to segregate the facts that constituted each crime.
 {¶ 17} To establish the obstruction of justice charge, the prosecution's most potent evidence was the testimony of Samantha Nelson. Nelson testified that, to her direct knowledge, Appellant harbored her brother, Tim Stafford, and allowed him to live in a trailer on Appellant's property. She further testified that Appellant was aware of the charges against Stafford and that Appellant and Frank Varney actively took steps to conceal Stafford's presence.
 {¶ 18} To establish the receiving stolen property charges, the prosecution primarily relied upon the testimony of Richard Fox and the fact that the stolen ATVs were in Appellant's possession. Fox testified that though he never owned or possessed the ATVs in question, Frank Varney asked him to provide false receipts for each as if Fox had sold them to him. *Page 9 
Fox agreed to do so, partly in consideration of a lawn mower Frank Varney gave him. Though Fox's testimony at trial differed from previous accounts that he had given, he stated his reasons for changing his testimony and the jury was able to evaluate his credibility. Other evidence, such as irregularities in the receipts which Appellant provided to law enforcement and other witness testimony, corroborated Fox's account.
 {¶ 19} The evidence adduced as to obstruction of justice and receiving stolen property was separate and distinct, as was the witness testimony concerning each. Though Detective Kevin Groves testified as to both offenses, the evidence was such that the jury could easily segregate the two counts. The purpose of the "joinder test" is to prevent the finder of fact from confusing the offenses. Here, because the evidence was straightforward, there was little or no danger the jury would confuse the evidence or improperly consider testimony on one offense as corroborative of the other. All the evidence presented by the State was simple and direct. As such, Appellant was not prejudiced by the joinder of the obstruction of justice offense to the receiving stolen property offenses. Thus, Appellant's first and second assignments of error are overruled. *Page 10 
 IV. Third Assignment of Error {¶ 20} As her third assignment of error, Appellant asserts that there was insufficient evidence to convict her for receiving stolen property. When reviewing the sufficiency of the evidence, appellate courts look to the adequacy of the evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. State v.Kingsland, 4th Dist. No. 07CA853, 2008-Ohio-4148, at ¶ 9; State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all essential elements of the offense beyond a reasonable doubt. Kingsland at ¶ 9;Jenks, paragraph two of the syllabus. This test raises a question of law and does not allow us to weigh the evidence. State v. Ward, 4th Dist. No. 05CA13, 2007-Ohio-2531, at ¶ 17.
 {¶ 21} As previously stated, to establish the receiving stolen property charges, the primary evidence the State adduced was the testimony of Richard Fox and the fact that the two stolen ATVs were in Appellant's possession. Fox testified at trial that at no point did he own the two ATVs in question nor did he attempt to sell them to Appellant's husband, Frank Varney. In fact, he stated that he had never even them. He testified that he *Page 11 
agreed to help create false receipts for the vehicles because Frank had a lawn mower that he wanted: "[Frank Varney] said if I do him a favor, he would give me the riding mower and asked for a favor. He said he got a couple four wheelers off of someone, he can't get a receipt for and needed a receipt for a bill of sale receipt for four wheelers so he could get a tag or sticker to ride it in public * * * . He came to my home with information for the four wheelers so I could write receipts for him. I never saw the four wheelers. I wrote them, give him as he had asked me to."
 {¶ 22} At trial, Fox testified that he was initially dishonest when he was questioned as to his involvement in creating the receipts. "I met with Mr. Groves about the Varney case. I also lied to Detective Groves saying I sold and traded four wheelers to Mr. Varney because I was scared of the Varney family and getting in trouble myself for lying for writing statements I wrote. I never owned, stole or seen the four wheelers, but Mr. Varney asked for the receipts." Fox testified that, in the end, he just wanted to come clean. "I just don't want to get in trouble for the statements I made to Mr. Groves and the receipts that I had written for that riding mower."
 {¶ 23} In contrast to Fox's statements concerning her husband, Appellant argues that the only real evidence offered to prove her guilt was that the ATVs were found on her property. Thus, according to Appellant, *Page 12 
her convictions were legally insufficient because there was no evidence that she knew or had reasonable cause to know that the ATVs were stolen. However, despite this assertion, we find that the record does contain such evidence.
 {¶ 24} Appellant's own testimony showed that she had extensive knowledge of the ATVs, the receipts and Fox's dealings with her husband. During cross-examination, the following exchange took place when Appellant was questioned as to the origin of the ATVs:
Q: "So you don't actually [know] from personal knowledge where they came from?
A: "Yeah, I do. I talked to Mr. Fox myself.
Appellant's testimony also revealed she was directly involved in the ATV transactions between Fox and her husband. "I talked to Mr. Fox many times on the phone and he would always promise receipts — you know, the owners manuals, and the titles for the bikes and he would say when I get them, I will bring them to you or your husband." These statements flatly contradict the testimony of Fox who claimed to have never seen the ATVs in question, let alone possess their titles and owners manuals. Appellant further testified regarding the creation, origin and sequence of the receipts, the receipts which Fox admitted were falsely created at Frank Varney's request. *Page 13 
 {¶ 25} In light of the foregoing, we find there was sufficient evidence to establish that Appellant knew, or had reasonable cause to believe, that the ATVs were stolen. Accordingly, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that all the essential elements of receiving stolen property were proven beyond a reasonable doubt. As such, Appellant's third assignment of error is overruled.
 V. Fourth Assignment of Error {¶ 26} In her fourth assignment of error, Appellant contends her convictions for receiving stolen property were against the manifest weight of the evidence. Initially, we state the appropriate standard of review.
 {¶ 27} When reviewing such claims, appellate courts should weigh the evidence and all reasonable inferences and also consider witness testimony. State v. Garrow (1995), 103 Ohio App.3d 368, 370-371,659 N.E.2d 814. The reviewing court sits, essentially, as a "thirteenth juror" and may disagree with the fact finder's conclusions regarding conflicting testimony during trial. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 "However, this review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact." Garrow at 371. A reviewing court should only reverse the conviction *Page 14 
if it appears that the fact finder, in resolving evidentiary conflicts, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins at 387.
 {¶ 28} Appellant argues that the evidence against her was neither certain nor reliable. She states that there was a lack of evidence connecting her to the stolen ATVs and that questions about Fox's credibility, when he admitted to previously lying about the events in question, makes the conviction for receiving stolen property against the manifest weight of the evidence. We disagree.
 {¶ 29} As we noted in the previous assignment of error, her own testimony provided evidence that Appellant was aware of and involved in the ATV transactions. Further, Appellant's testimony and Fox's testimony were directly contradictory. Unlike this court, the jury was able to observe the demeanor of both Fox and Appellant and evaluate each person's credibility in light of their testimony. In convicting Appellant, the jury clearly believed Fox and relied upon his version of events. Because the weight of the evidence and the credibility of witnesses are primarily for the trier of fact, we are unable to say that reliance on such testimony was against the manifest weight of the evidence. *Page 15 
 {¶ 30} Additionally, other evidence corroborated Fox's testimony that Appellant and her husband knowingly provided false receipts. Detective Grove stated that, from the outset, statements concerning the receipts made him suspicious. He testified that some of the receipts contained conflicting information and had stated dollar amounts which made him question their validity. Further, the manner in which they were produced made him doubtful. "Well, the previous night they gave me two separate different receipts for how they obtained that so this receipt was new information that they tried — they produced the next day." "It appeared they were just trying to produce receipts."
 {¶ 31} After reviewing the record below and weighing the evidence and all the reasonable inferences, we are unable to say that the jury clearly lost its way and created a manifest miscarriage of justice requiring a reversal of Appellant's convictions. As such, Appellant's convictions for receiving stolen property were not against the manifest weight of the evidence and her fourth assignment of error is overruled.
 VI. Fifth Assignment of Error {¶ 32} As her fifth and final assignment of error, Appellant contends her conviction for obstruction of justice was against the manifest weight of the evidence. For the following reasons, again, we disagree. *Page 16 
 {¶ 33} At the time of the events in question, Timothy Stafford, Appellant's brother, was under indictment for a number of felonies. When law enforcement officers executed the search warrant at Appellant's property, Stafford was found residing in a mobile home in a wooded area located approximately 700 feet behind Appellant's residence. As a result, Appellant was charged with obstruction of justice for harboring Stafford. Appellant contends that, even if Stafford was residing on her property, Appellant was unaware that he was doing so.
 {¶ 34} The State's primary evidence to establish this offense was the testimony of Samantha Nelson, a previous girlfriend of Appellant's son Josh and the mother of Appellant's grandchild. Nelson lived in Appellant's residence on various occasions, though she was not doing so at the time the search warrant was executed. Nelson testified that Stafford was living on the property with Appellant's full knowledge and consent. "[Stafford] would visit everybody a couple times a day * * * ." Further, Nelson testified that Appellant knew about the outstanding warrants on Stafford:
Q: "* * * [D]id they know exactly — did they say exactly what it was — did they know why he was being charged?"
A: "Yeah. That wasn't a secret. I mean out there with everybody who lived out there, everybody knew." *Page 17 
 {¶ 35} Additionally, Nelson testified that Appellant and her husband took active measures to conceal Stafford's presence from law enforcement. For example, she stated that Frank Varney drove Stafford to cash checks, but they would take back roads and drive a considerable distance in order to avoid police. She also stated that a gate was erected to restrict access to the mobile home where Stafford resided. "They pretty much kept him hid from the law and stuff."
 {¶ 36} In addition to Nelson's testimony, the jury heard evidence that indicated Stafford had been living on the property for some time. The mobile home had electricity, phone service, a refrigerator and food; there was even evidence Stafford was receiving mail. Rebutting Appellant's claim of lack of knowledge of Stafford's whereabouts, caller I.D. evidence showed that phone calls originating from Appellant's residence had been placed to Stafford's mobile home on the day the search warrant was executed. Further, Detective Groves stated that witness information concerning Stafford's presence was consistent with what was found at the scene. This included the information that Stafford drove around Appellant's property using a specific make of lawnmower. That specific type of lawn mower was subsequently found outside the mobile home in which Stafford was residing. *Page 18 
 {¶ 37} Appellant's primary argument in asserting this assignment of error is that Samantha Nelson was not a credible witness. However, in light of the testimony provided by multiple direct witnesses and by law enforcement officers, and keeping in mind that witness credibility is primarily for the trier of fact, we are unable to say the jury clearly lost its way and created a miscarriage of justice. Accordingly, her conviction for obstruction of justice was not against the manifest weight of the evidence and Appellant's final assignment of error is overruled.
 VII. Conclusion {¶ 38} In our view, Appellant's assignments of error are without merit. Her first and second assignments of error fail because the evidence produced by the State was simple and direct. Accordingly, she was not prejudiced by joinder of her offenses. Her third assignment of error fails because there was sufficient evidence for a rational trier of fact to find each element of the offense of receiving stolen property. Finally, Appellant's fourth and fifth assignments of error fail because she is unable to demonstrate that the jury's verdicts were against the manifest weight of the evidence. As such, each of Appellant's assignments of error are overruled and the decision of the trial court is affirmed.
 JUDGMENT AFFIRMED. *Page 19 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and Kline, J.: Concur in Judgment and Opinion. *Page 1