[Cite as *State v. Houston*, 2017-Ohio-4179.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104752**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANTONIO J. HOUSTON

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-15-597529-A, CR-15-597826-A, and CR-15-599941-A

**BEFORE:** Jones, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** June 8, 2017

**ATTORNEY FOR APPELLANT**

David L. Doughten
David L. Doughten Co. L.P.A.
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Ryan J. Bokoch
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Antonio Houston, appeals his conviction on multiple counts. We affirm.

## I. Procedural History and Facts

{¶2} In 2015, Houston was indicted in three separate but related cases. In Cuyahoga C.P. No. CR-15-597826-A, Houston was charged in the July 6, 2015 shooting involving Maurice Bradford and Larry Bradford. In Cuyahoga C.P. No. CR-15-599941-A, Houston was charged in the July 8, 2015 shooting involving Brad Bradford. In Cuyahoga C.P. No. CR-15-597529-A, Houston was charged in the subsequent recovery of the firearm used in the July 8, 2015 incident.

{¶3} The state moved to consolidate the three cases. The trial court granted the state's motion and the case proceeded to a jury trial at which the following pertinent evidence was presented.

{¶4} In the summer of 2015, the Fleet and Broadway divisions of the Heartless Felons gang in the city of Cleveland were at war. Previously, members of the two sects got along; they grew up together and attended the same schools. But a division occurred sometime in the spring of 2015. On May 4, 2015, Pedro "Dro" Barnes, a member of Broadway, was shot and killed, allegedly by a Fleet member. Antwoine "Ballzy" Palmer was shot at the same time, but survived. On June 20, 2015, Fleet member Arthur "Archie" Davis was shot and killed, allegedly by a Broadway member.

{¶5} Houston, a.k.a. "Papa," was part of the Broadway sect. People also knew

Houston by the last name Curry, perhaps because he had a brother with that last name. Houston had dated the same girl as Fleet member Brad Bradford. Brad had four brothers: Lawrence Black and Maurice, Larry, and Nolando Bradford.

{¶6} Maurice, Larry, and Nolando lived with their mother in an up/down house on East 85th Street in Cleveland. The upstairs was their apartment, and the downstairs was an informal bar run by their mother. On July 6, 2015, Maurice and Larry were sitting outside. Larry is a paraplegic from a previous shooting and was sitting either in his wheelchair or in a chair next to his wheelchair.

{¶7} At some point, Maurice called 911 and reported that "Antonio Curry" had just driven by and shot at him and Larry. Maurice's six-year-old daughter was also present, and Larry fell out of his chair to cover and protect her from the gunfire. The brothers thought they heard six gunshots, but no one was hit and a single bullet hole was found in the garage.

{¶8} Cleveland police officers Theresa Crews and Cynthia Cuba responded to the scene. When the police arrived, Maurice told Patrolwoman Crews that "Antonio Curry" had shot at him while driving by in a black SUV. Larry told Patrolwoman Cuba that the SUV drove by and a man shot at him from the driver's side rear window using a chrome handgun. Through investigation, the Cleveland police learned that "Antonio Curry," was really Antonio Houston.

{¶9} Two days later, on July 8, 2015, Brad Bradford was in the alley behind his house when another drive-by shooting occurred. Cleveland police officer Antonio

Andiano responded to the call. When Patrolman Andiano arrived, he saw 30 to 40 cartridge casings lying in the street. He spoke with Brad, who did not want to give him any details of the shooting. Brad did, however, tell his girlfriend, Rodnesha, about the shooting. Rodnesha testified that Brad told her Papa was riding in a black Kia truck with two women. They drove by him and "shot up" Rodnesha's Hyundai Sonata that Brad was driving. Rodnesha was not in the car at the time of the shooting. When Rodnesha got her car out of impound she counted 13 bullet holes in her car.

{¶10} On July 13, 2015, Cleveland Heights police officer Michael Mathis was flagged down by a scared female who reported that she was stopped at a traffic light when a man in the backseat of the car next to her pointed a gun at her and motioned her to pull over. While the female was talking to Patrolman Mathis, the subject car drove by and the woman pointed the car out to the officer. Patrolman Mathis pulled the car over without incident. Patrolman Mathis arrested the man in the backseat, Antonio Houston, who the victim positively identified as the man who had just pointed the gun at her.

{¶11} Patrolman Mathis found two loaded guns, a 9 mm Ruger and a Kel-Tec 9 mm, in a purse on the front passenger seat floor. Keyonna Anderson, who had been sitting in the front passenger seat, testified that the guns inside the purse were hers. She claimed she bought them on the street for protection. She testified that she could not remember when she bought the guns or describe what they looked like. She further claimed that after she bought the guns, she put them in her purse and put her purse up on a shelf. It was not until the day they were pulled over that she had pulled her purse

down off the shelf; she simply forgot there were two loaded guns in her purse.

{¶12} Kristen Koeth, a scientific examiner with the Cleveland Police Department's forensic laboratory, testified that six cartridge casings located at the scene of the July 8, 2015 shooting came from gun recovered during Houston's July 13, 2015 arrest.

{¶13} Detective Timothy Toler testified about his investigation into the crimes. He explained that when he initially tried to contact Maurice, Larry, and Brad, the men would not talk to him. Detective Toler found Larry in a hospital getting treatment for an unrelated illness, and it was then that Larry positively identified Houston as the shooter in a photo lineup. Larry signed his name to the photo lineup and wrote "Papa" next to Houston's photo. Brad finally spoke to the detective in August 2015, after he was the victim of another shooting in which he was injured.[1] Brad did not, however, testify at trial.

{¶14} Nolando, who was not home during the July 6th shooting, learned of it shortly after it happened and testified at trial. At first, Nolando denied recognizing Houston in the courtroom. The state was allowed to treat Nolando as a hostile witness, and upon further questioning, Nolando admitted he knew Houston as "Pops" and that his brother Maurice had told him that "Papa" had shot at him. Nolando admitted he was scared to testify because he was afraid of retaliation. Nolando stated that testifying is "snitching" and "snitches" "get, you know, shot at."

---

[1] Houston was subsequently charged in the August 2015 shooting involving Brad but all charges against him were dropped. Antwoine Palmer pleaded guilty to multiple felony counts involving the shooting.

{¶15} Larry testified at trial but only after he was brought in pursuant to a witness warrant. Larry testified that contrary to what he initially told police, he did not remember who shot him. He could not remember identifying the shooter in a photo lineup or during police interviews. But he knew who Antonio Houston was and reluctantly identified him in court. Upon further questioning, Larry remembered that when he spoke to the investigating detective about the case, he stated "Papa" was the shooter.

{¶16} Larry admitted that he and his brother Maurice are associated with Fleet and, back in July 2015, Fleet and Broadway had a "beef." Larry conceded that he did not want to be seen as a snitch and if he came into court and testified with a "good memory," he would be seen as a snitch.

{¶17} Detective Alfred Johnson of the Cleveland Police Department's Gang Impact Unit testified that he obtained a search warrant for Houston's phone and found several photos and videos pertinent to the shootings. Detective Johnson identified a video shot on July 5, 2015, in which Houston and Antwoine Palmer were holding guns. Houston was holding a 9 mm Ruger, which Detective Johnson testified was the same one used in the July 8, 2015 shooting involving Brad. Detective Johnson was confident it was the same gun because of the unique markings on the handle. During the video, both Houston and Palmer can be seen throwing up "gang signs" associated with the Heartless Felons.

{¶18} Detective Johnson identified a second video shot on July 7, 2015, in which

Houston can be seen holding a gun and stating: "F[---] Archie." According to the detective, Archie was associated with Fleet and was a friend of the Bradford brothers; as previously mentioned, Archie was shot and killed in June 2015. In another video also shot on July 7, Houston stated: "F[---] Archie, f[---] the Fleet n[---] and f[---] Wayne Bang and RIP Dro." According to Detective Johnson, Pedro "Dro" Barnes was part of Broadway and was shot and killed in May 2015.

{¶19} In a video shot July 26, 2015, after Houston's arrest and filmed in jail, Houston can be seen stating: "F[---] the Fleet n[---], LOH." "LOH," Detective Johnson explained, stands for "Land of the Heartless," which is a reference to the Heartless Felons gang.

{¶20} The detective also identified a series of texts that were exchanged minutes after the July 6, 2015 shooting at Maurice and Leonard's house. "Ma," identity unknown, texted Houston, "I heard what you did. Stop it." Houston replied, "What is you talking about." Ma responded, "TB." Detective Johnson explained that Maurice's nickname is Teddy Bear and is often abbreviated TB.

{¶21} Detective Johnson discussed the difficulties of the investigation, including the reluctance of victims and witnesses to come forward. He explained that "snitching" when "it comes to people in a criminal life style" means that if someone were to shoot them and they were to tell the police who just shot them, it would be considered snitching and a reason for retaliation.

{¶22} In CR-15-597529-A, the jury convicted Houston of improper handling of a

firearm in a motor vehicle, carrying a concealed weapon, and aggravated menacing. The jury acquitted him of receiving stolen property and one count each of improper handling of a firearm in a motor vehicle and carrying a concealed weapon. The court found Houston guilty of having weapons while under disability and of the repeat violent offender specification as charged in the underlying indictment. The court sentenced Houston to a total of 36 months in prison on this case.

{¶23} In CR-15-597826-A, the jury convicted Houston of two counts of felonious assault with one-, three-, and five-year firearm specifications; two counts of attempted felonious assault with one-, three-, and five-year firearm specifications; improper discharge of a firearm at or into a habitation or school with one-, three-, and five-year firearm specifications; carrying a concealed weapon; and discharging a weapon on or near a prohibited premise with one-, three-, and five-year firearm specifications. The court found Houston guilty of having weapons while under disability and of the repeat violent offender specification as charged in the underlying indictment. After merging many of the counts for the purposes of sentencing, the court sentenced Houston to a total of 44 years in this case to run consecutive to the 36-month sentence in CR-15-597529-A.

{¶24} In CR-15-599941-A, the jury returned a verdict of guilty of felonious assault, including one-, three-, and five-year firearm specifications, discharging a weapon on or near a prohibited premises, and improper handling of a firearm in a motor vehicle. The court found Houston guilty of having weapons while under disability and of the repeat violent offender specification as charged in the underlying indictment. The trial

court sentenced him to a total of 19 years in this case and ordered it be served

consecutively to the other two cases.

## II. Assignments of Error

{¶25} Houston now appeals, raising the following assignments of error for our

review:

> I.   The trial court erred by allowing prejudicial joinder of the charge of
> Aggravated Menacing et al. of [CR-]15-597529 to the offenses in CR
> 15-597529 and CR 15-599941.
>
> II.   The trial court erred by permitting witnesses to provide prejudicially
> irrelevant testimony which allowed the jury to base its verdict on matters
> other than evidence of the actual offense charged.
> III.   The trial court erred by allowing the jury to consider improper hearsay
> by improperly finding the testimony to be admissible as an excited
> utterance, Evid. R. 803(2).
>
> IV.   The evidence is insufficient to sustain two counts of Felonious
> Assault or [attempted] Felonious Assault in CR 15-597826.
>
> V.   Defense counsel's failure to object to hearsay violations and a
> duplicitous indictment deprived the defendant of his right to effective
> assistance of counsel.

## III. Law and Analysis

### A. Severance of Counts

{¶26} In the first assignment of error, Houston argues that the trial court erred to

his prejudice when it joined the three cases together.

{¶27} Crim.R. 13 provides that a trial court may order two or more indictments to

be tried together "if the offenses or the defendants could have been joined in a single

indictment or information." Crim.R. 8(A) governs the joinder of offenses in a single

indictment.   Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶28} The law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied.   *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 94.   "[J]oinder and the avoidance of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries."   *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981).   *See also State v. Schiebel*, 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54 (1990); *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

{¶29} Under Crim.R. 14, however, the trial court may grant a severance if it appears that the defendant would be prejudiced by the joinder.   The defendant bears the burden of proving prejudice.   *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶30} The state may refute the defendant's claim of prejudice under two methods. Under the first method, the state must show that the evidence from the other case could have been introduced pursuant to the "other acts" test of Evid.R. 404(B); under the second method (referred to as the "joinder test"), the state does not have to meet the stricter "other acts" admissibility test but only need to show the evidence of each crime

joined at trial is "simple and direct." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id.*

**{¶31}** "Simple and direct" evidence means the evidence of each crime is "so clearly separate and distinct as to prevent the jury from considering evidence of [one crime] as corroborative as the other." *State v. Quinones*, 11th Dist. Lake No. 2003-L-015, 2005-Ohio-6576, ¶ 48. *See also State v. Varney*, 4th Dist. Hocking Nos. 07CA18 and 07AP18, 2008-Ohio-5283 (the purpose of the "joinder test" is to prevent the finder of fact from confusing the offenses).

**{¶32}** Houston argues that there was a significant risk of unfair prejudice, so the case where the gun was recovered, Case No. CR-15-597529-A, should not have been joined with the other two cases. The state claims that even if there was a risk of prejudice, the evidence of the gun would have been allowed in pursuant to Evid.R. 404(B). We agree with the state's position.

**{¶33}** The evidence demonstrates that over a course of two days in July 2015, Houston committed two drive-by shootings against members of the same family who were involved in a rival gang. Then, just five days later, the gun used in one of the shootings was recovered from the car Houston was riding in. In all three events, Houston was using a gun while riding in the backseat of a car driven by a female.

**{¶34}** The evidence in all three cases showed that the offenses shared a common

purpose, motive, or scheme and were thus part of the kind of course of criminal conduct contemplated by Crim.R. 8. Accordingly, the multiple indictments may be tried together under Crim.R. 13.

{¶35} The first assignment of error is overruled.

## B. Gang Testimony

{¶36} In the second assignment of error, Houston argues that the trial court erred by allowing Detective Johnson to provide prejudicial and irrelevant testimony that allowed the jury to base its verdict on matters other than evidence of the actual offenses charged. Houston claims that Detective Johnson erroneously opined that Houston was a member of the Broadway gang and discussed unsolved murders and that would have led the jury to believe that because Houston was a member of a violent gang, he had a propensity for violence and must have committed the crimes with which he was charged. He also contends that the cell phone videos Detective Johnson played for the jury unfairly prejudiced him because it made it appear as though he was affiliated with the Heartless Felons.

{¶37} Detective Johnson testified about the unsolved murder of Broadway gang member Pedro "Dro" Barnes, who was shot and killed in May 2015, and Arthur "Archie" Davis, a member of Fleet, who was shot and killed the next month.

{¶38} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. We, therefore, will not disturb the trial court's judgment absent an

abuse of discretion.   *State v. Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 45.

{¶39} Relevant evidence is admissible unless prohibited by an evidentiary rule, statute, or constitutional provision. Evid.R. 402.   Evid.R. 403(A) provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.   Although most evidence presented by the state is prejudicial, not all evidence is unfairly prejudicial. *Webster* at ¶ 46, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107.   The court must balance the prejudicial effect of evidence against its probative value.   *Webster* at *id.*

{¶40} Evidence of gang membership is analyzed under Evid.R. 404.   *State v. Garcia*, 8th Dist. Cuyahoga No. 102546, 2016-Ohio-585, ¶ 71, citing *State v. Huff*, 145 Ohio App.3d 555, 565, 763 N.E.2d 695 (1st Dist.2001).   Evid.R. 404(B) provides that evidence of other acts is inadmissible to prove that the accused acted in conformity with his bad character.   In other words, such evidence is not admissible to prove that a defendant is a person of bad character and therefore more likely to commit the alleged offense.   *Garcia* at *id.* citing *Huff*.   However, evidence of prior "bad acts" may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.   Evid.R. 404(B).

{¶41} The Ohio Supreme Court has held that evidence of a defendant's gang affiliation is admissible pursuant to Evid.R. 404(B) to show motive. *Webster*,   8th Dist.

Cuyahoga No. 102833, 2016-Ohio-2624, at ¶ 49, citing *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 170.   This is particularly the case where "'the interrelationship between people is a central issue.'"   *Webster* at *id.,* quoting *Bethel* at *id.*

**{¶42}** Detective Johnson's testimony was relevant to show the relationship between Houston and the Bradfords and to put the crimes into context.   That said, the trial court did not give the state carte blanche to introduce any and all testimony of Houston's gang activities.   The court limited evidence related to the Heartless Felons, Broadway, and Fleet gangs and sustained multiple defense objections.

**{¶43}** During his testimony, Detective Johnson testified about and showed videos pulled from Houston's cell phone that the police confiscated after his arrest and pursuant to a search warrant.   During the July 5, 2015 video, filmed one day prior to the shooting involving Maurice and Larry Bradford, Detective Johnson explained that Houston and a friend are "twisting" their "fingers" into a specific hand sign identified as a Heartless Felon gang sign.   Houston is also seen holding the gun used in the July 8, 2015 shooting involving Brad Bradford.

**{¶44}** During the video shot on July 7, 2015, Detective Johnson explains when Houston says, "F[---] the Fleet n[---], LOH," that "LOH" stands for "Land of the Heartless," which is a reference to the Heartless Felons.

**{¶45}** In other videos and text messages entered into evidence, references were made to both Fleet and Broadway and to individual gang members.   Evidence of Houston's gang involvement and evidence of his text messages, phone calls, and videos

were necessary because they were probative of his guilt and explained his motive for the crimes — to seek revenge on a rival gang. They were, therefore, admissible under Evid.R. 404(B). *See Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, at ¶ 52.

**{¶46}** In light of the above, the second assignment of error is overruled.

## C. Excited Utterances

**{¶47}** In the third assignment of error, Houston argues that the trial court erroneously admitted hearsay into evidence under the excited utterance exception to hearsay, Evid.R. 803(2).

**{¶48}** The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Thus, whenever the state seeks to introduce hearsay into evidence in a criminal proceeding, the court must determine not only whether the evidence fits within an exception to the hearsay rule, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him or her. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 29.

> **{¶49}** Evid.R. 803(2) provides an exception to the hearsay rule if the out-of-court statement constituted an "excited utterance," which the rule defines as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense.

*State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993).

**{¶50}** To qualify as an "excited utterance" the following four factors must be established:

(1) there was an event startling enough to produce a nervous excitement in the declaran[t], (2) the statement must have been made while under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event.

*State v. Boles*, 190 Ohio App.3d 431, 2010-Ohio-5503, 942 N.E.2d 417, ¶ 34 (6th Dist.), citing *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978). The controlling factor comes down to whether the declaration resulted from impulse as opposed to reason and reflection. *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 13.

**{¶51}** Houston argues that it was improper for Patrolwoman Crews and Patrolwoman Cuba to testify to statements Maurice made to them after the July 6, 2015 shooting because the statements occurred more than 20 minutes after the shooting and were the result of reflective thought. We disagree.

**{¶52}** Maurice, who did not testify at trial, made statements to police within minutes of the robbery, during which he, his young daughter, and his wheelchair-bound brother were shot at out of a moving car. Patrolman Crews described Maurice's demeanor when they arrived on scene as "nervous and upset." Patrolman Cuba described Maurice as "excited and upset." Maurice told Patrolman Cuba that his house

had just been shot at by a man named Antonio Curry, who was known to him. Maurice described the car the shooter was riding in as a black Mitsubishi SUV with dark tinted windows; the shooter was riding in the rear driver's side seat and used a chrome handgun.

{¶53} Based on these facts, Maurice's statements to police fall within the "excited utterances" exception to the hearsay rule. Therefore, we must now determine whether Houston's right of confrontation was violated.

{¶54} In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial." *Id.* at 59. The court explained that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." This means that the state may not introduce "testimonial" hearsay against a criminal defendant, regardless of whether such statements are deemed reliable, unless the defendant has an opportunity to cross-examine the declarant. *Id.* at 53-54, 68.

{¶55} However, the *Crawford* court also held that the Confrontation Clause only requires exclusion of "testimonial" as opposed to "nontestimonial" evidence. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). If a statement is not testimonial, the principles embodied in the

Confrontation Clause do not apply. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

{¶56} Although the *Crawford* court did not specifically define the term "testimonial," it explained that hearsay statements are implicated by the Confrontation Clause when they are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 52.

{¶57} In *Davis* at 822, decided two years after *Crawford*, the court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." By contrast, statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis* at *id.* *See also State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, paragraph one of the syllabus.

{¶58} As previously stated, the shooting occurred only 20 minutes prior to the police arriving on scene. Maurice, his brother, and his young daughter were present. Maurice was still under the stress and shock of the shooting when he made statements to police who were concerned with apprehending the suspects before it was too late. The police were focused on apprehending the shooter, and Maurice was assisting them with this, there was no evidence that anybody was reflecting on how Maurice's statements

could be used at trial. Therefore, Maurice's statements were nontestimonial and did not violate the Confrontation Clause. Since Maurice's statements qualified as an excited utterance and there was no violation of the hearsay rule, we find the trial court acted within its discretion in allowing the police officers to testify regarding Maurice's statements.

{¶59} The third assignment of error is overruled.

## D. Sufficiency of the Evidence — Felonious Assault

{¶60} In the fourth assignment of error, Houston argues that there was insufficient evidence to sustain his convictions for felonious assault and attempted felonious assault as to the July 6, 2015 shooting.

{¶61} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶62} Houston was convicted of two counts of felonious assault, in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance. He was also convicted of two counts of attempted felonious assault in violation of R.C. 2923.02 (the attempt statute) and R.C. 2903.11(A)(1), which provides that no person shall

knowingly cause serious physical harm to another.

{¶63} Houston argues that there was insufficient evidence to show that he was the shooter because the physical evidence did not show that more than one shot was fired, no one testified that shots were fired in the Bradfords direction, and there was no proof that the bullet hole in the Bradfords' garage came from Houston's gun.

{¶64} We find that there was sufficient evidence to support the convictions for felonious assault and attempted felonious assault. Maurice told police that "Antonio Curry," who police later learned was Antonio Houston, shot out of the rear passenger window of a moving car at Maurice and his brother Larry while the car was passing by his house. Maurice was able to describe the car, the suspect, and that the shooter used a chrome gun. Larry, who did not want to testify and said he was unable to remember who shot at him in court, initially told Detective Toler that he was "110 percent positive" it was "Papa" who shot at him. Larry chose Houston out of a photo lineup and identified him as the shooter. During trial, he confirmed his signature on the photo lineup and that he had written the name "Papa" next to Houston's picture.

{¶65} In light of the above, we find that the state provided sufficient evidence of felonious assault and attempted felonious assault. Therefore, the fourth assignment of error is overruled.

## E. Effective Assistance of Trial Counsel

{¶66} In the fifth assignment of error, Houston argues that he was denied the effective assistance of trial counsel.

**{¶67}** To establish a claim for ineffective assistance of counsel, Houston must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Under *Strickland*, our scrutiny of an attorney's work must be highly deferential, and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688.

**{¶68}** Houston claims that his counsel was ineffective for counsel's failure to object to hearsay violations and for failing to ask for the dismissal of multiple counts of attempted felonious assault as charged in CR-15-597826-A. We find no error.

**{¶69}** As Houston concedes, trial counsel objected throughout trial to what counsel perceived to be hearsay violations; many of those objections the trial court sustained. Next, as previously discussed, Houston was convicted under the attempt statute, R.C. 2923.03, and for felonious assault pursuant to R.C. 2903.11(A)(1) and 2903.11(A)(2) for each victim, Maurice and Leonard. There is no evidence the charges were duplicitous. Moreover, the offenses merged as to each victim for the purposes of sentencing.

**{¶70}** Thus, Houston has not shown that his counsel's performance was deficient and the fifth assignment of error is overruled.

**{¶71}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

TIM McCORMACK, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR