[Cite as *State v. Black*, 2017-Ohio-8063.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
## No. 105197

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAWRENCE BLACK

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600941-B

**BEFORE:** Celebrezze, J., Laster Mays, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 5, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Ryan J. Bokoch
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1}    Defendant-appellant, Lawrence Black ("Black"), brings this appeal challenging his convictions for participating in a criminal gang, felonious assault, improperly handling a firearm in a motor vehicle, improperly discharging a firearm into a habitation, discharging a firearm on or near prohibited premises, and having weapons while under disability.   Specifically, Black argues that his convictions are not supported by sufficient evidence and against the manifest weight of the evidence, and that the trial court erred in imposing court costs.   After a thorough review of the record and law, this court affirms in part, reverses in part, and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} The instant matter arose from a conflict between two Cleveland gangs, the Fleet gang and the Broadway gang, that came to a head in the spring and summer of 2015.   The conflict escalated after an April 2015 shooting at the Big Boss Lounge during which two members of the Fleet gang were shot.   After this April 2015 shooting, shootings occurred between the Fleet and Broadway gangs on the following dates:   May 4, May 17, June 13, June 20, July 3, July 4, and July 5.   The June 13 and July 5 shootings are relevant to the instant appeal.

{¶3} The June 13 shooting was a drive-by shooting that took place on Scovill Avenue during which members of the Fleet and Broadway gangs exchanged fire.   The

July 5 shooting was a drive-by shooting that took place at a house on Finn Avenue across the street from Willow Elementary School.

{¶4} In Cuyahoga C.P. No. CR-15-600941-B, Black was charged for participating in a criminal gang, his involvement in the Scovill Avenue drive-by shooting, his involvement in the July 5 Finn Avenue drive-by shooting, and his involvement in an alleged kidnapping incident. The Cuyahoga County Grand Jury returned a 50-count indictment against Black and his codefendants, Bradley Bradford (hereinafter "Bradley"), Andre Ingram, Maurice Bradford (hereinafter "Maurice"), and Bradley and Maurice's mother, Edwina Neal. Counts 2-22 pertained to the Scovill Avenue drive-by shooting. Counts 37-44 pertained to the July 5 Finn Avenue drive-by shooting. Counts 31-34 and 36 pertained to the alleged kidnapping incident. Black was arraigned on November 16, 2015. He pled not guilty to the indictment.

{¶5} Neal and Ingram entered plea agreements with the state. Black, Bradley, and Maurice elected to proceed to trial. Furthermore, Black and his codefendants waived their right to a jury trial and elected to try the case to the court.

{¶6} A bench trial commenced on September 15, 2016. At the close of the state's case, the state dismissed the following counts as they related to Black: Counts 2-20, related to the Scovill Avenue shooting, and Counts 31-35, related to the alleged kidnapping. (Tr. 1385-1387.) Black moved for a Crim.R. 29 judgment of acquittal at the close of the state's case. The trial court denied Black's motion. The defense rested, and renewed its Crim.R. 29 motion, which the court denied.

**{¶7}** At the close of trial, on September 29, 2016, the trial court found Black guilty on the following counts: Count 1, participating in a criminal gang; Count 38, felonious assault, with a criminal gang activity specification, one- and three-year firearm specifications, and a forfeiture specification; Counts 39 and 40, improperly handling firearms in a motor vehicle, with one-, three-, and five-year firearm specifications and a forfeiture specification; Count 41, improperly discharging into a habitation, with a criminal gang activity specification, one-, three-, and five-year firearm specifications and a forfeiture specification; Count 42, discharge of firearm on or near prohibited premises, with one- and three-year firearm specifications; and Count 43, having weapons while under disability. The trial court found Black not guilty on the following counts: Count 37, felonious assault; Count 46, improperly handling a firearm in a motor vehicle; Count 47, carrying a concealed weapon; and Count 48, having weapons while under disability.

**{¶8}** The remaining counts and specifications were dismissed. The trial court ordered Black to forfeit a 2004 Ford Expedition and a .40 caliber handgun. The trial court referred Black to the probation department for a presentence investigation report and set the matter for sentencing.

**{¶9}** The trial court held a sentencing hearing on November 15, 2016. The trial court merged Counts 38, 39, 41, and 42 for sentencing purposes, over the state's objection. The state elected to sentence Black on Count 41. The trial court imposed an aggregate prison sentence of 14 years — Count 1: two years for the participating in a criminal gang count; Count 40: one year for the improper handling count to be served

consecutively with the three-year firearm specification; Count 41: two years for the improper discharge count to be served consecutively with the three- and five-year firearm specifications and the one-year criminal gang activity specification; and Count 43: one year for the having weapons while under disability count.

{¶10} The trial court ordered the underlying felony counts to run concurrently with one another. However, pursuant to R.C. 2929.14(B)(1)(a) and (B)(1)(g), the trial court ordered the three-year firearm specifications in Counts 40 and 41 and the five-year firearm specification in Count 41 to run consecutively to one another. Finally, the trial court entered judgment against Black "in an amount equal to the costs of [the] prosecution," and suspended payment of costs during Black's incarceration.

{¶11} On November 28, 2016, Black filed the instant appeal challenging the trial court's judgment. Black assigns four errors for review:

> I. The state failed to present sufficient evidence to sustain a conviction against Appellant.
>
> II. Appellant's conviction is against the manifest weight of the evidence.
>
> III. The trial court erred by ordering Appellant to pay costs when it did not properly comply with the statute.
>
> IV. The court costs imposed at the sentencing hearing infringes upon Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(b)(5) [sic], R.C. 2947.14, and related sections of the Ohio Constitution.

## II. Law and Analysis

### A. Sufficiency

{¶12} In his first assignment of error, Black argues that his convictions are not

supported by sufficient evidence.

{¶13} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶14} In support of his sufficiency challenge, Black argues that there was insufficient evidence that he was involved in any gang activity. As noted above, Black was convicted of participating in a criminal gang, in violation of R.C. 2923.42(A). After review, we find that Black's argument is entirely unsupported by the record. Several witnesses testified on behalf of the state regarding Black's involvement with and participation in the Fleet gang.

{¶15} Fred Booker testified about the June 6, 2016 shooting that occurred at the Bradford house. Booker explained that he was at the house with Black and Maurice. He testified that the day after the shooting, he and Black talked about retaliating against the Broadway gang members responsible. As set forth in further detail below, Booker testified about Black's involvement in the July 5, 2015 drive-by shooting on Finn Avenue, which was carried out in retaliation for the murder of Fleet gang member Arthur "Archie" Davis. Booker asserted that Black and Bradley picked him up after the shooting and that they returned to the Broadway neighborhood to see if the Broadway

gang members were "out there." (Tr. 639-640.) Booker testified that he, Black, Bradley, Deon "Tru" Jackson, and Ricardo Sims took a picture underneath a street sign in the Broadway neighborhood in order to "disrespect" the Broadway gang and posted the picture on Instagram. (Tr. 643.)

{¶16} Ashley Palmer testified about Black's involvement in the Finn Avenue drive-by shooting. She further testified that Black was associated with the Fleet gang.

{¶17} Cleveland Police Officer Brandon Melbar testified about an incident that occurred on July 6, 2015, approximately six hours after the Finn Avenue drive-by shooting. Officer Melbar explained that he responded to the area of E. 85th Street and Maryland Avenue for a "radio assignment that people were loading a firearm or firearms into a black SUV to possibly be doing a retaliation shooting." (Tr. 1007.) Officer Melbar stated that the occupants in the vehicle were Edwina Neal, Bradley, and Black. After searching the vehicle, officers recovered a .40 caliber handgun in the glove compartment. Officer Melbar testified that Black was the front seat passenger and, thus, the closest occupant in the vehicle to the firearm.

{¶18} Detective Al Johnson from the Gang Impact Unit testified that Booker, Maurice, Bradley, and Black were associated with the Fleet gang. (Tr. 1223.) Furthermore, Detective Johnson testified in detail about several of Black's social media postings in which Black references the Fleet gang, is present with other Fleet gang members, and displays Fleet gang hand signals.

{¶19} The aforementioned testimony of Booker, Palmer, Officer Melbar, and

Detective Johnson, if believed, is sufficient to establish that Black was involved with the Fleet gang.

**{¶20}** Furthermore, in support of his sufficiency challenge, Black asserts that he "could not have committed or been involved in any shootings" because there was no evidence that he ever possessed a firearm. Appellant's brief at 29. After review, we find that this argument is also meritless.

**{¶21}** As noted above, Black was convicted of felonious assault, in violation of R.C. 2903.11(A)(2); improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B); improperly discharging into a habitation, in violation of R.C. 2923.161(A)(1); discharge of firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3); and having weapons while under disability, in violation of R.C. 2923.13(A)(2). These convictions pertained to Black's involvement in the July 5, 2015 drive-by shooting on Finn Avenue.

**{¶22}** The record reflects that the state presented sufficient eyewitness testimony to support Black's convictions. Ashley Palmer was an eyewitness to the July 5, 2015 shooting. She testified that she was standing outside Monique "Tina" Good's house with her brother Antonio. She asserted that Good's house is across the street from Willow Elementary School and the school's playground. She explained that a black truck pulled up and shots were fired from inside the truck at her, her brother, and Good's house: "I seen a black truck come, pull up, and when it turned the corner, I seen Lillee hanging out." (Tr. 471.) Palmer testified that "Lillee" was Lawrence Black. Palmer further

asserted that Black was "[h]anging out the passenger window" and that he was in possession of a firearm. (Tr. 471.) Palmer explained that Black was in possession of a "longer gun" rather than a handgun. (Tr. 472.) Palmer asserted that she had seen the black truck before parked outside of the house belonging to the Bradfords' mother, Neal. Palmer's eyewitness testimony alone, if believed, is sufficient to establish that Black was, in fact, in possession of a firearm and to support Black's convictions pertaining to the drive-by shooting.

**{¶23}** Additionally, the state presented the testimony of Booker. Booker testified that he met up with Black and Bradley after the drive-by shooting. Specifically, Booker explained that Black and Bradley picked him up. Black and Bradley were in Neal's "Explorer Expedition" truck; Bradley was driving and Black was riding with him. (Tr. 635-636.) Booker testified that Black and Bradley told him they retaliated for "Archie's" murder by shooting up a house in the Broadway neighborhood. Booker asserted that both Black and Bradley had handguns in the truck and that the handguns were "[o]n the[ir] persons." (Tr. 638.) Booker further testified that the shooting took place "[p]robably like a little bit before" Black and Bradley picked him up. (Tr. 637.)

**{¶24}** Based on the foregoing analysis, Black's first assignment of error is overruled. Black's convictions are supported by sufficient evidence.

### B. Manifest Weight

**{¶25}** In his second assignment of error, Black argues that his convictions are against the manifest weight of the evidence.

**{¶26}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶27}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶28} In support of his manifest weight challenge, Black argues that Ashley Palmer's trial testimony was not credible. Specifically, Black emphasizes that Palmer lied about being kidnapped and recanted the kidnapping allegation. As such, Black asserts that Palmer's testimony was not credible nor could her testimony be relied upon in convicting him.

{¶29} Palmer acknowledged that she made false statements to the police during the course of their investigation, and that the state gave her immunity in exchange for her testimony. Specifically, when Palmer reported her observations during the Finn Avenue drive-by shooting to the police in September 2015, she told the officers that Bradley kidnapped her at gunpoint immediately before the shooting and that Black was present when the kidnapping took place. During her trial testimony, Palmer acknowledged that this kidnapping allegation was not true. She explained that she made up the kidnapping allegation because she was upset that her brother Antowine, also known as "Ballzy," had been arrested, upset about all of the shootings that occurred as a result of the feud between the Broadway and Fleet gangs, and because she was scared. Palmer explained that although the kidnapping allegation was untrue, the other aspects of her testimony — particularly her observations during the Finn Avenue drive-by shooting — were truthful.

{¶30} The testimony of firearms examiner Kristen Koeth, Detective William Tinsley, and Officer David Crane support Palmer's testimony that Black opened fire with a "longer gun." Furthermore, the testimony of Detective Tinsley and Officer Crane support Palmer's testimony that Black opened fire from a vehicle traveling on the street.

**{¶31}** Koeth testified that three types of spent cartridge casings were recovered from the scene of the Finn Avenue drive-by shooting: (1) five 9 millimeter casings, (2) three .40 caliber cartridge casings, and (3) one 7.62 x 39 millimeter caliber casing. Koeth explained that one spent 7.62 x 39 millimeter caliber bullet was recovered and bullet fragment from the 7.62 x 39 millimeter caliber weapon was recovered inside of Good's house. Koeth confirmed that 7.62 x 39 millimeter caliber ammunition is used in an "AK-47 type rifle." (Tr. 1163.)

**{¶32}** Detective Tinsley testified that officers recovered spent cartridge casings from three types of weapons at the scene of the July 5 Finn Avenue drive-by shooting: (1) a 9 millimeter gun, (2) a .40 caliber gun, and (3) an AK-47. (Tr. 333.) Detective Tinsley explained that the spent shell casing from the AK-47 was recovered in the street.

**{¶33}** Officer Crane testified that he responded to a "[s]hots fired call" on Finn Avenue on July 5. (Tr. 419.) He testified that he located and secured spent rounds in the street. He asserted that he located a 7.62 shell casing "down the street." (Tr. 424.) He explained that a 7.62 casing is from an "assault weapon." (Tr. 424.)

**{¶34}** Black further argues that there were no fingerprints, DNA evidence, trace metal detection evidence, or gunshot residue evidence linking him to the .40 caliber handgun recovered from the glove compartment in Neal's car.

**{¶35}** Koeth asserted that the .40 caliber casings recovered at the scene of the Finn Avenue drive-by shooting were fired by the .40 caliber handgun that officers seized from the glove compartment of Edwina Neal's vehicle on July 6, 2015. As noted above,

Black was sitting in the front passenger's seat in Neal's vehicle, and thus, was the closest occupant in the vehicle to the handgun in the glove compartment.

**{¶36}** The trial court, as the trier of fact, had sufficient information to judge Palmer's credibility. The trial court heard that Palmer grew up in the Broadway neighborhood. The trial court heard Palmer's testimony about the fabricated kidnapping allegation, her subsequent recantation, the reasons she made up the allegation, and the fact that she received immunity in exchange for her trial testimony. The trial court heard Palmer's testimony that she left the scene of the shooting before the police arrived and that she did not report her observations to the police until approximately two months later, and only after her brother was arrested.

**{¶37}** The trial court was in the best position to view all of the witnesses, including Palmer, and observe their demeanor, gestures, and voice inflections that are critical observations in determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *Antill*, 176 Ohio St. at 66, 197 N.E.2d 548. Furthermore, the trial court had sufficient information to judge each witness's credibility and "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. The evidence — including, but not limited to Palmer's eyewitness testimony, Booker's testimony, the testimony about the shell casings recovered from the crime scene, and the circumstantial evidence — does not weigh

heavily against Black's convictions. Furthermore, we cannot say that this is the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice.

**{¶38}** Black's second assignment of error is overruled.

### C. Court Costs

**{¶39}** Black's third and fourth assignments of error pertain to the trial court's imposition of court costs.

**{¶40}** R.C. 2947.23(A)(1) governs the imposition of court costs. The statute provides, in relevant part: "In all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." Thus, the trial court must include in its sentence the costs of prosecution and render a judgment against the defendant for costs, even if the defendant is indigent. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. However, a trial court has the discretion to waive court costs if a defendant is indigent. *State v. Walker*, 8th Dist. Cuyahoga No. 101213, 2014-Ohio-4841, ¶ 9.

**{¶41}** In his third assignment of error, Black argues that the trial court failed to comply with R.C. 2947.23 because it imposed costs in its sentencing journal entry without imposing court costs in open court. Black's argument is unsupported by the record.

**{¶42}** During the sentencing hearing, the trial court stated, "I'll order a transcript at [s]tate's expense. I'll order court costs. Defendants are remanded." (Tr. 1521.) The trial court further ordered, "costs suspended during the incarceration." (Tr. 1521.)

The trial court's sentencing journal entry provides, in relevant part, "[t]he court hereby enters judgment against [Black] in an amount equal to the costs of this prosecution. Payment of costs suspended during incarceration." Accordingly, the record reflects that the trial court imposed court costs in open court during the sentencing hearing and in its sentencing journal entry.

{¶43} Black further contends that the trial court failed to comply with R.C. 2947.23 because the court did not notify him about the consequences of failing to pay court costs. In support of his argument, Black directs this court to *State v. Huber*, 8th Dist. Cuyahoga No. 98206, 2012-Ohio-6139. Black cites *Huber* for the proposition that the trial court was required to notify him that if he failed to pay court costs, the court may order him to perform community service.

{¶44} The state concedes Black's third assignment of error and acknowledges that the trial court failed to notify Black of the consequences of failing to pay court costs. Although the state conceded this error, we disagree with Black's position.

{¶45} Black's reliance on *Huber* is misplaced. After reviewing the record, it is evident that Black's argument is based upon a former version of R.C. 2947.23. In *State v. Cooper*, 8th Dist. Cuyahoga No. 104599, 2017-Ohio-970, this court explained,

> S.B. 337, effective September 28, 2012, amended R.C. 2947.23. The current version of R.C. 2947.23(A)(1) requires the court to notify the defendant that the court may order community service if the defendant fails to pay court costs *only "[i]f the judge or magistrate imposes a community control sanction or other nonresidential sanction."* *Id.* Thus, the current statute no longer requires such notification when a trial court imposes a prison term. *State v. Brock*, 8th Dist. Cuyahoga No. 104334,

2017-Ohio-97, ¶ 13; *State v. Brown*, 12th Dist. Butler No. CA2013-03-043, 2014-Ohio-1317.

(Emphasis added.)   *Cooper* at ¶ 30.

**{¶46}** In the instant matter, Black was sentenced in November 2016.  Thus, the current version of R.C. 2947.23(A)(1) applies.   Because Black was sentenced to a prison term, the trial court did not err when it ordered him to pay court costs without notifying him of the consequences if he failed to pay such costs.

**{¶47}** Based on the foregoing analysis, Black's third assignment of error is overruled.

**{¶48}** In his fourth assignment of error, Black argues that the trial court failed to consider his present and future ability to pay court costs.   Black acknowledges that he is aware of the Ohio Supreme Court's holding in *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164.   There, the Ohio Supreme Court held that an indigent defendant must move to waive court costs at the time of sentencing, and if a defendant failed to do so, the issue was waived and the doctrine of res judicata would apply. *Threatt* at ¶ 23.   However, Black raises this argument to preserve his appellate rights.   In support of his argument, Black emphasizes that he received a 14-year prison sentence and that the trial court found him to be indigent for purposes of appointment of appellate counsel.

**{¶49}** The state argues that Black waived his right to appeal the imposition of court costs because he did not object to the order during the sentencing hearing.

**{¶50}** Initially, we respectfully disagree with the state's argument and note that *Threatt* has been superseded by statute. In *State v. Nelson*, 8th Dist. Cuyahoga No. 104795, 2017-Ohio-6883, this court explained:

> the General Assembly amended R.C. 2947.23 in Am.Sub.H.B. 247, which was effective March 22, 2013. The Ohio legislature added a new provision in subsection (C), which states: "The court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, including any costs under section 2947.231 of the Revised Code, at the time of sentencing or at any time thereafter." According to this provision, a defendant is no longer required to move to waive costs at the time of sentencing. Therefore, *Threatt* has been superseded by statute, and the holding in [*State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278] is no longer applicable.

*Nelson* at ¶ 89. Pursuant to the amendment to R.C. 2947.23, defendants are no longer required to move to waive court costs at the time of sentencing. *Nelson* at ¶ 89.

**{¶51}** Nevertheless, we find no merit to Black's argument that the trial court erred by requiring him to pay court costs. The record reflects that Black failed to file an affidavit of indigency. This court has held that defendants must file an affidavit of indigency addressing their present and future ability to pay in order for the court to waive fines and costs. *State v. Ledbetter*, 8th Dist. Cuyahoga No. 104077, 2017-Ohio-89, ¶ 19, citing *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 12. *Accord State v. Wilson*, 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, ¶ 90. Furthermore, "[a] finding of indigency for purposes of appointment of counsel is not sufficient to warrant a waiver of costs and fines at sentencing." *Wilson* at ¶ 90, citing *State v. Simpson*, 8th Dist. Cuyahoga No. 101088, 2014-Ohio-4580, ¶ 20. The trial court

retained discretion under R.C. 2947.23(A)(1) to impose court costs regardless of Black's financial status. *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 36; *Cooper*, 8th Dist. Cuyahoga No. 104599, 2017-Ohio-970, at ¶ 26.

{¶52} Based on the foregoing analysis, Black's fourth assignment of error is overruled.

### D. Trial Court's Sentence

{¶53} Although Black does not challenge the 14-year prison sentence imposed by the trial court, we find that the trial court committed plain error by ordering consecutive service of the firearm specifications underlying Counts 40 and 41.

{¶54} Initially, we recognize that in some instances, parties' due process rights can be violated when an appellate court raises an unbriefed issue sua sponte. The Ohio Supreme Court has explained that appellate courts should not decide cases on the basis of a new, unbriefed issue without "giv[ing] the parties notice of its intention and an opportunity to brief the issue." *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988), citing *C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 313 N.E.2d 400 (1974); *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21. Although any issues pertaining to the trial court's sentence were not briefed in this appeal, codefendant Bradley challenged the trial court's imposition of consecutive sentences on the firearm specifications underlying Counts 40 and 41, and the parties briefed the issue in Bradley's companion case.[1] Accordingly, we will address this

---

[1] Case No. 105217.

issue as it pertains to Black because the state had notice of and briefed the issue in Bradley's companion case.

**{¶55}** Pursuant to R.C. 2929.14(B)(1)(b), a trial court is ordinarily prohibited from imposing more than one prison term for firearm specifications associated with felonies "committed as part of the same act or transaction." R.C. 2929.14(B)(1)(g), however, contains an exception to this general rule and provides

> [i]f an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

**{¶56}** After reviewing the record, it is evident that the trial court mistakenly believed that R.C. 2929.14(B)(1)(g) applied and required the court to order consecutive service of the firearm specifications underlying Counts 40 and 41. The trial court's sentencing journal entry provides, in relevant part, "pursuant to R.C. 2929.14(B)(1)(a) and (B)(1)(g) the court is mandated to impose the 3 year [firearm specification] in Count 40 consecutive to all other [firearm specifications]." Furthermore, during the sentencing hearing, the trial court stated, in relevant part,

> with regard to Count 41, the improper discharge of a weapon into a habitation, I shall impose a two-year sentence for the base charge. I shall impose a three-year sentence for the gun specification. The one and

three-year merge, obviously. The law required a three-year sentence consecutive.

There's a one-year gun specification — gang specification that must be imposed. It could be one, two, or three. I'm imposing the one-year sentence.

There's a five-year drive-by specification that must be imposed. All of those must be run consecutive to each other and consecutive to the two-year sentence for the base charge.

On [Count 41] alone the sentence is 11 years, and I have no discretion to alter that.

As to Count 40, improper handling of a weapon in a motor vehicle, that's essentially the transportation of weapons in a car, I'm imposing a one-year sentence on that count, but I'll run that concurrent to everything else. *I also believe I'm constrained to impose a three-year sentence for an additional firearm specification, pursuant to R.C. 2929.14(B)(1)(g).*

So on these counts [Counts 40 and 41] the sentence is 14 years. That applies to [Black and Bradley].

(Emphasis added.) (Tr. 1516-1517.)

{¶57} Contrary to the trial court's assertion, R.C. 2929.14(B)(1)(g) was inapplicable. Black was only convicted of one of the felonies enumerated in R.C. 2929.14(B)(1)(g) — felonious assault as charged in Count 38. However, Black was not sentenced on his felonious assault conviction. The trial court merged Counts 38, 39, 41, and 42 for sentencing purposes, and the state elected to sentence Black on Count 41, improperly discharging into a habitation, rather than on the felonious assault count.

{¶58} In Bradley's companion case, the state concedes that the trial court was not required to order consecutive service of the firearm specifications underlying Counts 40 and 41. However, the state argues that the trial court's sentence should be affirmed

because the court had discretion to run these specifications consecutively and did, in fact, exercise that discretion.

**{¶59}** This court rejected a similar argument in *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770 (8th Dist.). There, the defendant-appellant was convicted of aggravated murder, discharge of a firearm on or near prohibited premises, and improper discharge of a firearm at or into a habitation or school. Each count contained one- and three-year firearm specifications. The trial court ran the three-year firearm specifications for the discharge of a firearm on or near prohibited premises and improper discharge of a firearm at or into a habitation or school counts consecutive to each other and consecutive to the three-year firearm specification on the aggravated murder count. *Id*. at ¶ 39.

**{¶60}** On appeal, appellant argued that the trial court mistakenly believed that "it was required to run all three firearm specifications consecutively when, in fact, R.C. 2929.14(B)(1)(g) requires only that two specifications be run consecutively and that the court has the discretion to run any other firearm specifications consecutively." *Id*. at ¶ 42. The state suggested that the trial court could have, in other words, had discretion to order consecutive service of the third firearm specification. This court rejected the state's argument, explaining,

> The state makes no direct attempt to counter James's argument that the
> court believed it to be required to order consecutive service on the firearm
> specifications apart from suggesting that the court could have ordered
> consecutive service on the third firearm specification "for public safety

reasons." This is nothing more than an argument that the court exercised its discretion to order consecutive service of the third firearm specification. There can be no exercise of sentencing discretion when the court so plainly indicates its belief that it is compelled by statute to impose consecutive sentences.

*Id*. at ¶ 44. Because the trial court mistakenly believed that it had to order consecutive service of the third firearm specification, this court remanded the matter for resentencing.

**{¶61}** In the instant matter, like *James*, the record reflects that the trial court mistakenly believed that it was compelled to order consecutive service of the firearm specifications underlying Counts 40 and 41 pursuant to R.C. 2929.14(B)(1)(g). We find no merit to the state's position that the trial court was simply exercising its sentencing discretion by running the firearm specifications consecutively.

**{¶62}** Based on the foregoing analysis, we reverse the trial court's imposition of consecutive sentences on the three-year firearm specifications underlying Counts 40 and 41, and remand this aspect of Black's sentence for resentencing.

### III. Conclusion

**{¶63}** After thoroughly reviewing the record, we find that Black's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence; the trial court did not err in imposing court costs.

**{¶64}** The trial court erred by indicating that it was required by R.C. 2929.14(B)(1)(g) to order consecutive service of the firearm specifications underlying Counts 40 and 41. This aspect of Black's sentence is reversed and remanded for resentencing.

**{¶65}** Judgment affirmed in part; reversed in part; and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

ANITA LASTER MAYS, P.J., and
LARRY A. JONES, SR., J., CONCUR