[Cite as *State v. Bradford*, 2017-Ohio-8481.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105217**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# BRADLEY L. BRADFORD

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600941-A

**BEFORE:**    Jones, J., Laster Mays, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   November 9, 2017

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Ryan J. Bokoch
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Bradley Bradford ("Bradford"), appeals his convictions for participating in a criminal gang, felonious assault, improperly handling a firearm in a motor vehicle, improperly discharging a firearm into a habitation, discharging a firearm on or near prohibited premises, and having weapons while under disability. We affirm in part, reverse in part, and remand for a limited resentencing.

**Procedural History and Facts**

{¶2} This case arose out of a conflict between two Cleveland gangs, the Fleet Avenue and Broadway Avenue gangs, that came to a head in the spring and summer of 2015. In April 2015, two members of the Fleet gang were shot at a local bar. On May 4, 2015, a shooting against Broadway members injured Antowine Palmer and killed Pedro "Dro" Barnes ("Dro Barnes"). The May 4 shooting occurred outside of 5010 Finn Avenue. After those shootings, multiple retaliatory shootings occurred in May, June, and July 2015, including the June 20, 2015 shooting death of Fleet gang member Arthur "Archie" Davis.[1]

{¶3} This appeal involves a drive-by shooting on Scovill Avenue on June 13 and a drive-by shooting at 5010 Finn Avenue on July 5; both incidents took place in the city of Cleveland. Bradford was not convicted of any charges with relation to the June 13

---

[1] The gang war also included two shootings, June 6 and June 8, 2015, in which Bradley Bradford was the named victim. *See State v. Houston*, 8th Dist. Cuyahoga No. 104752, 2017-Ohio-4179.

incident; therefore, the discussion that follows will focus mainly on the July 5 shooting.

{¶4} Bradford was charged in a 50-count indictment along with his brothers, Maurice Bradford and Lawrence Black ("Black"); their mother, Edwina Neal ("Neal"); and alleged fellow gang member Andre Ingram. Neal and Ingram entered into plea agreements with the state and the three brothers elected to proceed to trial before the bench.

{¶5} At the end of the state's case, the state dismissed Counts 31-34 and 36 as they related to Bradford. The court found Bradford guilty of participating in a criminal gang; felonious assault, with a criminal gang activity, one- and three-year firearm, and forfeiture specifications; improperly handling a firearm in a motor vehicle with one- and three-year firearm and forfeiture specifications; improperly discharging a firearm into a habitation with criminal gang activity, one- and three-year firearm, and forfeiture specifications; discharging a firearm on or near prohibited premises with one- and three-year firearm specifications; and having weapons while under disability. The court sentenced Bradford to a total of 14 years in prison.

{¶6} Bradford filed a notice of appeal. Black and Maurice Bradford were also convicted of various crimes and have appealed their convictions; this court recently affirmed Black's convictions but reversed and remanded his case for a limited resentencing. *See State v. Black*, 8th Dist. Cuyahoga No. 105197, 2017-Ohio-8063; *see also State v. Bradford*, 8th Dist. Cuyahoga No. 105199.

{¶7} Further facts will be discussed under the assignments of error.

## Assignments of Error

I. Appellant has been deprived of his liberty without due process of law by his convictions for participating in a criminal gang, improperly handling firearms in a motor vehicle, improperly discharging into a habitation, a criminal gang specification and firearm specifications which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

II. Appellant's convictions were against the manifest weight of the evidence.

III. The trial court erred in ordering consecutive sentences for the firearm specifications in Counts 40 and 41.

## Law and Analysis

### Sufficiency and Manifest Weight of the Evidence

{¶8} In his first and second assignments of error, Bradford contends that the trial court erred in denying his Crim.R. 29 motion for acquittal and that his convictions for participating in a criminal gang, improperly handling firearms in a motor vehicle, improperly discharging into a habitation, a criminal gang specification and firearm specifications lacked sufficient evidence and were against the manifest weight of the evidence. Although they involve different standards of review, because they involve interrelated issues, many of the same arguments and a review of the same evidence, we address Bradford's first and second assignments of error together.

{¶9} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard

we apply when reviewing a sufficiency-of-the-evidence challenge. *Id.*

**{¶10}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**{¶11}** Bradford argues that there was insufficient evidence to support his convictions for improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), and improperly discharging into a habitation, in violation of R.C. 2923.16(A)(1), because the state did not identify Bradford as the assailant during the July 5, 2015 drive-by shooting on Finn Avenue.

**{¶12}** Bradford also contends that there was insufficient evidence to support his conviction for participating in a criminal gang, in violation of R.C. 2923.42(A), which provides, in part:

No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, * * * or shall purposely commit or engage in any act that constitutes criminal conduct * * * .

*Id.*

{¶13} The crux of Bradford's argument is that the state failed to present direct evidence demonstrating that he had participated in the crimes. This contention, however, ignores the general rule in Ohio that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus. "The lack of direct evidence is not dispositive." *State v. Ladson*, 8th Dist. Cuyahoga No. 104642, 2017-Ohio-7715, ¶ 13. While there may not have been overwhelming direct evidence of Bradford's participation, there was a significant amount of circumstantial evidence linking him to the crimes with which he was charged.

{¶14} Ashley Palmer ("Palmer"), Antwoine Palmer's sister, testified that she grew up with the Bradfords and used to date Bradley Bradford. She was standing outside 5010 Finn Avenue on July 5, 2015, when a black truck pulled up. Palmer recognized the black truck because she had seen the truck parked outside of the house belonging to the Bradfords' mother, Neal.[2] The occupants started shooting at her and the other people in front of the house. Palmer recognized Lawrence Black, who, according to Palmer, was

---

[2] At various times throughout trial, the same house is referred to both as the Bradfords' house and the Bradfords' mother's house. It appears as though one or more of the Bradford brothers lived with their mother in a house that had a bar, run by Neal, in the lower half of the house and an apartment in the upper half of the house.

"hanging" out of the passenger car window shooting with a "longer gun." Other men in the SUV were shooting out of the back of the vehicle. Palmer "thought" the driver "looked" like Bradford.

{¶15} Fred Booker ("Booker"), a former Fleet gang member, testified that he knew Bradford and his brothers. He knew Bradford was a drug dealer who sold heroin; in fact, according to Booker, Bradford used to sell heroin to the Broadway gang before the "beef" started between the two gangs. Booker explained that a "beef" was:

Booker: A feud like. Like they trying to hurt us, we trying to hurt them.

State: And so during this time period, if you saw

somebody from Broadway —

Booker: I was shooting at them.

State: And what would they be doing?

Booker: Shooting at us.

(Tr. 591.)

{¶16} Booker testified that after Dro Barnes was murdered, Maurice Bradford was shot in a drive-by shooting by suspected Broadway gang members. Black was present during that shooting and used his "AK" to shoot back at the shooter. Four Fleet members, including Bradford and Black, had chipped in money to buy the "AK," but Booker had only seen Black shoot the gun.

{¶17} Shortly after Maurice was shot, the Bradfords' house was shot at, allegedly by Broadway gang members. Booker testified that he and Bradley talked about

retaliating against Broadway for the various shootings. Booker named the various Fleet members he was associated with: Maurice, Black, Bradley, K.O., Tru, Chip, Mondo, Gerald, Bally (Andre Ingram), and Archie (deceased).

{¶18} According to Booker, on July 5, 2015, Black and Bradford picked him up in Neal's SUV shortly after the Finn Avenue shooting. Bradford was driving and Black was sitting in the front passenger seat. Black and Bradford told Booker they shot up a house in the Broadway neighborhood to retaliate for Archie's murder. According to Booker, both Bradley and Black had handguns "[o]n the[ir] persons" and the shooting took place "[p]robably like a little bit before" the brothers picked him up. He testified that the group headed back to the Broadway area, looking for more Broadway members to shoot at. When the group did not see anyone, they decided to take a picture in front of a street sign and post it online to taunt the Broadway gang.

{¶19} About an hour after the shooting, Bradford uploaded a photo to his Instagram account that showed Black, Booker, and two other men under a Broadway-area street sign. Bradford was not in the picture. Booker explained that Bradford was not in the picture because he was driving the SUV and had to remain in the vehicle in case the group was spotted and needed to make a quick getaway.

{¶20} Approximately six hours after the shooting, Cleveland Police pulled over Neal's SUV in response to a call for a radio assignment that "people were loading a firearm or firearms into a black SUV to possibly be doing a retaliation shooting." At this point, Neal was driving, Black was sitting in the front passenger seat, and Bradford

was in the back seat. Police found a .40 caliber firearm in the glove compartment that matched cartridge casings recovered from the scene of the Finn Avenue shooting.

**{¶21}** In August 2015, according to Booker, Bradley Bradford was shot, allegedly by the Broadway gang, and Neal asked him (Booker) to go to her house and retrieve the "AK." Booker went to the house but the police were already there searching the house so he was unable to get the gun.

**{¶22}** There was also ample evidence presented at trial that Bradford was part of the Fleet Avenue gang. We recognize that "nominal or passive association" with a gang is not enough to prove active gang membership. *State v. King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574, ¶ 15, citing *State v. Hairston*, 9th Dist. Summit Nos. 23663 and 23680, 2008-Ohio-891, ¶ 18. In this case, numerous witnesses testified about the "beef" between the Fleet and Broadway gangs that dated back to the spring of 2015. Booker testified that he was at the Bradfords' house on June 6, 2015, with Black and Maurice Bradford when someone shot up the house.

**{¶23}** The day after the shooting Booker and Black discussed retaliating against the Broadway gang because they believed the Broadway gang was responsible for the shooting. Palmer testified she recognized Black from the Finn Avenue shooting and "thought" the driver looked liked Bradford.

**{¶24}** Booker testified that Bradford and Black picked him up after the Finn Avenue shooting and told him that they had committed that crime to retaliate against the Broadway gang. Booker then returned with Bradford, Black, and two other Fleet gang

members to the Broadway area to look for Broadway gang members to shoot. They were not able to find anyone so the men took a picture of themselves in front of a Broadway-area street sign. Bradford posted the picture to his Instagram account.

{¶25} The state presented other evidence of Bradford's Instagram posts, in which Bradford commented on other known gang members' postings or posted pictures of himself where other known gang members post. Bradford also posted a picture of his young son throwing the Fleet gang symbol, a picture of himself with other known gang members and a caption that referenced the Fleet gang, and various pictures of himself holding firearms, including one with a caption that referenced deceased gang member Archie Davis.

{¶26} Detective Al Johnson ("Detective Johnson") with the Cleveland Police Gang Impact Unit testified that, based on his training and experience, Bradford was affiliated with the Fleet Avenue and Click Goons gangs. Detective Johnson explained that although both of those gangs were subsets of the Heartless Felons, Bradford was not a member of the Heartless Felons. He explained that the Heartless Felons served as an umbrella organization and not all Fleet Avenue gang members belonged to the Heartless Felons. Detective Johnson was convinced that Bradford was a Fleet gang member even though the state had not produced any pictures of Bradford himself throwing gang symbols.

{¶27} In light of the above, we find that the state offered compelling direct and circumstantial evidence to show that Bradford's constant presence with gang members

proved that his relation to them was more than a mere "association." Bradford's constant presence in the company of other gang members, and in particular his involvement in skirmishes with the rival Broadway gangs, could cause a rational trier of fact to conclude that his involvement with the Fleet Avenue gang went beyond passive association and amounted to active membership in the gang. To find otherwise would be to ignore the obvious circumstantial evidence. *See King*, 8th Dist. Cuyahoga No. 98234, 2013-Ohio-574, at ¶ 22. In addition, a reasonable trier of fact could infer that Bradford was the driver involved in the Finn Avenue shooting; the state presented sufficient evidence of Bradford's guilt when all the evidence is considered as a whole.

{¶28} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1977), citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Weight of the evidence involves "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and determine whether, in

resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at *id.*

{¶29} Bradford challenges the credibility of Ashley Palmer and Fred Booker, both of whom testified reluctantly for the state. He argues that because Palmer recanted kidnapping allegations against Bradford during her direct examination (charges that Bradford was indicted on but were dismissed at the end of the state's case in chief), none of her testimony was credible and the trial court erred in relying on any of her testimony to convict him.

{¶30} As we stated in *Black*, 8th Dist. Cuyahoga No. 105197, 2017-Ohio-8063:

> Palmer acknowledged that she made false statements to the police during the course of their investigation, and that the state gave her immunity in exchange for her testimony. Specifically, when Palmer reported her observations during the Finn Avenue drive-by shooting to the police in September 2015, she told the officers that Bradley kidnapped her at gunpoint immediately before the shooting and that Black was present when the kidnapping took place. During her trial testimony, Palmer acknowledged that this kidnapping allegation was not true. She explained that she made up the kidnapping allegation because she was upset that her brother Antowine * * * had been arrested [for shooting at the Bradford's

house], upset about all of the shootings that occurred as a result of the feud between the Broadway and Fleet gangs, and because she was scared. Palmer explained that although the kidnapping allegation was untrue, the other aspects of her testimony — particularly her observations during the Finn Avenue drive-by shooting — were truthful.

*Id.* at ¶ 29.

{¶31} Bradford also claims that Booker should not be believed because he was a gang member with a criminal record and was to receive a reduced sentence in an unrelated case in exchange for his testimony.

{¶32} We are reminded that the trial court, as the trier of fact in this case, was in the best position to judge the witnesses' credibility. The court was aware of Palmer's false allegations of kidnapping; the charges in relation to those allegations was subsequently dismissed. The court was also aware of Booker's lengthy record and his current criminal cases. Both Bradford and his codefendants had the opportunity to cross-examine Booker as to his motives for testifying.

{¶33} Moreover, the court did not rely just on the testimony of Palmer and Booker. The testimony of these two witnesses was corroborated by the other witnesses. Firearms examiner Kristen Koeth ("Koeth") and Cleveland Police Detective William Tinsely ("Detective Tinsely") testified that police recovered three types of spent cartridge shells at the scene of the Finn Avenue shooting: (1) five 9 mm casings, (2) three .40-caliber cartridge casings, and (3) one 7.62 x 39 mm casing that is used in an AK-47 type rifle.

{¶34} Koeth testified that the .40-caliber casings recovered at the scene were fired

by the .40-caliber handgun the police found in Neal's black SUV hours after the shooting.

As mentioned, Neal was driving the car, and Black and Bradford were in the vehicle. Detective Tinsley testified that the 7.62 casing was from an "assault weapon," which was never recovered but matches the description of the "long gun" Palmer testified Black was holding during the Finn Avenue shooting.

{¶35} In light of the witnesses' testimony and the circumstantial evidence that links Bradford to the crimes, the evidence does not weigh heavily against conviction and there was sufficient evidence to convict Bradford. Therefore, the first and second assignments of error are overruled.

**Consecutive Sentences — Firearm Specifications**

{¶36} In the third assignment of error, Bradford argues that the trial court erred in ordering a consecutive sentence on the firearm specifications for Count 40, improper handling of a weapon in a motor vehicle with one-, three-, and five-year firearm specifications, and Count 41, improper discharge into a habitation with one-, three-, and five-year firearm specifications.

{¶37} Under R.C. 2929.14(B)(1)(b), a trial court generally cannot impose more than one prison term on firearm specifications committed as part of the same act or transaction. An exception to this general rule is found in R.C. 2929.14(B)(1)(g), which provides, in part:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a

specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶38} In this case, Bradford was convicted of only one of the felonies enumerated in R.C. 2929.14(B)(1)(g), Count 38, felonious assault. But Bradford was not sentenced on Count 38. Instead, Counts 38, 39, 41, and 42 merged for sentencing purposes and the state elected to sentence Bradford on Count 41. The trial court believed, however, that R.C. 2929.14(B)(1)(g) applied and ran the three-year firearm specification in Counts 40 and 41 consecutive to all other firearm specifications. As mentioned, Bradford was convicted in Count 40 of improper handling of a weapon in a motor vehicle and in Count 41 of improper discharge into a habitation. These crimes are not enumerated in R.C. 2929.14(B)(1)(g). Thus, the trial court was not mandated to run the firearm specification in Counts 40 and 41 consecutive to other firearm specifications.

{¶39} The state concedes that the trial court was not required to order consecutive sentences for the specifications in Counts 40 and 41, but argues that Bradford's sentences should be affirmed because the court had the discretion to run the sentences consecutively.

{¶40} In *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770 (8th Dist.), the trial court imposed three firearm specifications consecutively. James argued that the court mistakenly believed that it was required to run all three firearm

specifications consecutively, when, under R.C. 2929.14(B)(1)(g), the court was only required to run two of the specifications consecutively. The state argued that the trial court could have ordered consecutive service of all three firearm specifications, thus, his sentence should be affirmed. This court rejected the state's argument explaining that "there can be no exercise of sentencing discretion when the court so plainly indicates its belief that it is compelled by statute to impose consecutive sentences and remanded the case for resentencing." *Id.* at ¶ 44.

{¶41} Likewise, in this case, the court could not have been employing its discretion in sentencing Bradford to consecutive service if the court believed, as it stated, that it was "constrained" and "required" to impose consecutive sentences. Therefore, the case is remanded for a resentencing hearing limited to the issue as set forth under this assignment of error.

{¶42} The third assignment of error is sustained.

{¶43} Affirmed in part; reversed in part; case remanded for proceedings consistent with this opinion.


It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR